OPINION OF THE COURT
Bellacosa, J.
This appeal arises from a medical malpractice action whose viability is dependent on the application and contours of CPLR 214-a. This Court is obliged to determine whether a plastic stent, placed in plaintiff’s nose for postsurgery healing purposes, constitutes a "foreign object” that would avoid the bar of the statute of repose. We conclude that the device is not a foreign object within the meaning of the statute and its purpose and history, as shaped by and reflected in our governing precedents.
Supreme Court granted defendant Shapiro’s motion for summary judgment and dismissed the complaint against him. The Appellate Division affirmed and granted the plaintiff leave to appeal. We now also affirm.
In May 1986, defendant Dr. Jack Martin Shapiro performed a nasal reconstruction on plaintiff at the New York Eye and *209 Ear Infirmary. At the conclusion of the procedure, Dr. Shapiro packed the nasal cavity with Bacitracin gauze and inserted a shaped piece of plastic — a silastic stent. This device was to provide temporary support, promote healing and prevent scarring. The packing material and the stent were expected to be removed by Dr. Shapiro approximately 10 days after the surgery. At that time, the doctor removed only the packing material.
For the next six years, plaintiff suffered persistent nasal and respiratory problems. He consulted with Dr. Shapiro and other doctors. The last contact with Dr. Shapiro occurred in September 1988. No one detected the presence of the stent or diagnosed the cause of the plaintiff’s complaints or condition. In 1992, a new doctor performed an endoscopic rhinoscopy, discovered the stent and removed it. Plaintiff’s troublesome symptoms ceased. He then commenced this action in June 1993, within one year of the discovery and extraction of the stent.
Supreme Court dismissed the action against Dr. Shapiro as untimely on the ground that the "foreign object” exception to the Statute of Limitations did not apply. Under its ruling, the case was found to have been commenced more than 2xh years beyond the uncontested last date of treatment with Dr. Shapiro in 1988, and thus was barred by the Statute of Limitations.
The Appellate Division affirmed (230 AD2d 303). The Court concluded that the crucial distinction between a foreign object and a fixation device "is whether the object was deliberately left inside the patient in the first instance” (id., at 307). The Court drew a definitive demarcation line that "[a] foreign object is one that the doctor 'does not intend to leave inside the body’ ” (id., quoting McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214-a:3, at 603), in contradistinction to a fixation device which "is meant to be left inside the patient” (id. [emphasis in original]). Since the stent was intended to be left, albeit temporarily, in this patient, it was classified as a "fixation device” (id., at 305).
The Court added that "[w]hile this result is troublesome to the Court, we find that to hold otherwise would conflict with those cases in which the Court of Appeals has not only defined what constitutes a 'foreign object’ but also consistently cautioned against judicial extension of the foreign object exception of CPLR 214-a” (id.). The Court emphasized that "the *210 express intent of the legislation was to curtail judicial expansion of the discovery rule” (id,., at 306; see, Bill Jacket, L 1975, ch 109, Governor’s Program Bill Mem, at 4; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214-a:3, at 603).
Presiding Justice Murphy dissented (id., at 309). His preferred legal theory was that the instant claim "is based on a physician’s failure to make certain that all temporary holding devices — clamps, temporary stents, and others — have been removed from the body at the close of a single — albeit several-stage — medical proceeding” (id., at 311).
The case presents another application of the governing statute in the light of our precedents. The "foreign object” exception to the Statute of Limitations emerged in Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427). There, we concluded that "where a foreign object [a surgical clamp] has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice” (id., at 431). We noted that "foreign object” cases differ from those involving "negligent medical treatment” because the former do not create "the danger of belated, false or frivolous claims” — one of the paramount goals of Statutes of Limitation (id., at 430-431).
Six years after Flanagan, in 1975, the Legislature codified the precedential "foreign object” exception in CPLR 214-a (see, Siegel, NY Prac § 42, at 52 [2d ed]). The statute prescribes that an action for medical malpractice "must be commenced within two years and six months of the act, omission or failure complained of * * * provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier” (CPLR 214-a). Importantly, the statute expressly excludes "chemical compound[s], fixation devicefs] [and] prosthetic aid[s] or device[s]” from the definition of the term "foreign object” (id. [emphasis added]).
After the statutory codification, this Court decided Rodriguez v Manhattan Med. Group (77 NY2d 217). There, the Court held that "a 'fixation device’ [an I.U.D.] originally implanted in a patient’s body for a specific treatment purpose is [not] transformed into a 'foreign object’ within the meaning of [CPLR 214-a] when a physician retained to remove it negli *211 gently fails to do so” (id., at 218-219). The Court noted that, unlike Flanagan, "there [was] no claim against the physician who actually inserted the I.U.D.; instead, plaintiffs [sought] recovery from a different treating physician” (id., at 223). We observed that "the gist of plaintiff’s claim, i.e., a negligent failure to detect the continued presence of a previously inserted device, is most logically classified as one involving misdiagnosis — a category for which the benefits of the 'foreign object’ discovery rule have routinely been denied” (id., at 223).
Additionally, the Court explained that "the codification of the judicially created 'foreign object’ rule in CPLR 214-a precludes our adoption of a more flexible discovery rule for these cases even if 'considerations similar to those which motivated the court in Flanagan [c]ould be applied with like effect to the * * * different circumstances [presented here]’ ” (id., at 223-224, quoting Beary v City of Rye, 44 NY2d 398, 414). In other words, the statutory codification limited the range of common-law development. The Rodriguez Court concluded that application of the "foreign object” exception there would have "represented] a giant step toward precisely what the statute’s drafters feared: 'bringing virtually all medical malpractice cases under the discovery rule’ ” (id., at 224, quoting Bill Jacket, L 1975, ch 109, Governor’s Program Bill Mem, at 4).
The next and most recent poststatute explication on the "foreign object exception” occurred in Rockefeller v Moront (81 NY2d 560). There, the Court determined that a suture which was misplaced during a hernia operation did not constitute a "foreign object;” rather, it, too, was a "fixation device” (id., at 562). The Court stated that "Mbjects such as surgical clamps, scalpels, and sponges are introduced into the patient’s body to serve a temporary medical function for the duration of the surgery, but are normally intended to be removed after the procedure’s completion” (id., at 564). The Court explained that "no assessment of the medical professional’s expert judgment or discretion in failing to remove them is necessary to establish negligence” (id.). Rather, "items which are placed in the patient with the intention that they will remain to serve some continuing treatment purpose constitute 'fixation devices’ ” (id.). Additionally, the Court reasoned that a claim based on such negligent implantation "is more readily characterized as one predicated on negligent medical treatment, which, like misdiagnosis, is a category of malpractice not covered by the 'foreign object’ rule” (id., at 565).
In Rockefeller, the Court observed that it was "not unmindful of the harsh consequences of ruling [against] plaintiff, who *212 first discovered the misplaced suture that caused his sterility only after undergoing exploratory surgery performed 18 years after the injury-producing herniorrhaphy” (id., at 566). Nonetheless, "our holding [remained] consistent with this Court’s prior cautionary directive that the 'foreign object’ exception must not be broadened beyond the narrow confines announced in Flanagan” and delineated by the statute (id.). CPLR 214-a, its legislative history and our pre- and poststatute precedents evolved to a statement of a narrow rule: "only in circumstances where a foreign object is negligently 'left’ in the patient’s body without any intended continuing treatment purpose will the discovery rule be available to delay the running of the Statute of Limitations” (id. [emphasis added]).
This case presents yet another variation among a myriad of medical protocols, devices and procedures. It is not about the failure to detect an "object,” like an I.U.D. inserted into a patient for an indefinite period of time; nor does it concern a doctor’s negligence in improperly attaching an "object” to the wrong organ. Claims predicated on misdiagnosis and negligent medical treatment more readily implicate the rationale and policy direction of our precedents which is to prevent untimely claims dependent upon the assessment of a doctor’s professional judgment or discretion. The instant scenario, on the other hand, presents a more elusive classification question. Nevertheless, our analysis comfortably rests on the same dispositional criterion used in Rockefeller — intentional insertion of a therapeutic item for postsurgery continuing treatment purposes.
The rule that emerges from Rockefeller also offers a measure of definiteness. A "foreign object” is one that is "negligently 'left’ in the patient’s body without any intended continuing treatment purpose” (Rockefeller v Moront, supra, 81 NY2d, at 566; see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214-a:3, at 603 ["(i)t has become relatively clear that a foreign object is one that the doctor does not intend to leave inside the body”]). That test removes this stent from the "foreign object” category and designation. Unquestionably, it was implanted with an intentional continuing treatment objective. Even in the vernacular, it cannot be said to have been "left” in plaintiff’s nose. Rather, it was put there only to be removed after it had served its postsurgery healing purposes. The time frame was to be relatively short and conditionally fixed, but the key feature is the uncontroverted protocol of insertion as part of a continu *213 ing treatment modality. Thus, it may be an "object,” but it is not "foreign” and not "left behind,” in any medical or legal senses.
In sum, therefore, we disagree with plaintiffs theory that the relatively short and ordinarily definite nature of the stent’s time in the nose should allow it to be treated as a "foreign object.” We are similarly unpersuaded by the analysis propounded by the dissent in the Court below concerning a "multistage procedure” exception (i.e., that the surgical procedure continued until the packing was removed). These understandable explorations searching for individualized justice in the midst of well-settled definiteness of the governing principles are theoretically unsupportable and would engender unevenness of application. Also, they are contrary to the legislative intent to limit the scope of the "foreign object rule.” These efforts to enlarge the exception would also undermine, if not contradict, the statute and the policy lines and precedents that have emerged to fix boundaries for this troublesome field.
We are satisfied that an affirmance here is mandated by the statute and by our consistent restraint against opening up the "foreign object” exception. It has been noted that the codification of the judicially created "foreign object” rule in CPLR 214-a constricts judicial expansiveness towards a more plaintiff friendly discovery rule (see, Rodriguez v Manhattan Med. Group, 77 NY2d 217, 224, supra; Bill Jacket, L 1975, ch 109, Governor’s Program Bill Mem, at 4; see also, 2 Bard and Marano, New York Medical Malpractice § 9.2.2.2, at 9-14).
Yet, in closing our resolution and discussion of this case, we reiterate that this area of medical malpractice has engendered expressions of possible "unfairness” suffered by the strict adherence to definitive rules and policies (see, e.g, Rockefeller v Moront, 81 NY2d 560, 566, supra; LaBarbera v New York Eye & Ear Infirmary, supra, 230 AD2d, at 305, affd 91 NY2d 207 [the instant case]). We conclude, nonetheless, that the Legislature, having statutorily occupied the field, is more appropriately suited to effectuate any redefinition or expansion of the application of the exception, if that is warranted.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
Order affirmed, etc.