W. JONES, Justice.
I. Nature of the Case
Respondent Dr. Samuel Jorgenson, M.D., negligently performed a spinal surgery on Appellant Patrick Stuard on July 15, 2004. Stuard’s symptoms subsided after the surgery and Dr. Jorgenson did not realize he had negligently operated at the wrong spinal level until over two years later. The parties dispute whether, for purposes of the two-year statute of limitations, the cause of action accrued at the time of the surgery or instead at the time the mistake came to light because of a second injury, when the error was discovered. Stuard appeals from the district court’s grant of summary judgment to Dr. Jorgenson. The district court held that the cause of action accrued at the time of the negligent surgery, and was therefore barred.
II. Factual and Procedural Background
On July 15, 2004, Dr. Samuel Jorgenson performed a spinal surgery on Patrick Stuard. Stuard had suffered an on-the-job injury on or about March 1, 2004. In performing the surgery, Stuard was placed under anesthesia, his back was cut open to expose his spine, tissue and disk material of the spine was removed, holes were drilled into Stuard’s spine and a plate was installed to permanently stabilize and support the spine. Dr. Jorgenson was supposed to operate on the T6-7 spinal level but instead performed the operation on the T5-6 level.[1] Dr. Jorgenson did not realize at that time that he had operated on the wrong level. Stuard had several follow up visits with Dr. Jorgenson as well as x-rays after the surgery, in which Dr. Jorgenson did not determine that he had operated at the wrong level. The chest x-rays were ordered for the routine purpose of determining whether any material had shifted or come loose, to see if any spinal fractures had developed, and to see if any screws had torn out.[2] While the record indicates that an MRI would have, and eventually did, reveal the surgery was performed at the wrong level, Dr. Jorgenson did not order one until September 20, 2006, after the second injury occurred.
*703 During the first post-operative office visit on August 4, 2004, Dr. Jorgenson took x-rays and noted that Stuard’s “original pain [was] relieved with surgery.” At the second visit on August 18, 2004, the office assistant conducting the visit noted that the post operative course was proceeding as expected. At the next visit on September 1, 2004, Dr. Jorgenson wrote that Stuard had told him that “his preoperative symptoms [were] completely relieved,” and on September 29, 2004, Dr. Jorgenson reported that Stuard “continues to be completely asymptomatic from his left side.” On November 1, 2004, and February 25, 2005, Dr. Jorgenson took more x-rays of Stuard and again found that Stuard’s pain was resolved.
Stuard suffered a second work-related injury on August 31, 2006 and began to experience pain. Dr. Jorgenson performed an MRI on Stuard’s spine on September 20, 2006. Sometime after that MRI, the workers compensation nurse case manager finally brought to Dr. Jorgenson’s attention that he had operated on the wrong level. Dr. Jorgenson stated in his deposition that he did not have knowledge that he had operated at the wrong level until after Stuard’s September 28 and October 9 visits in 2006. On October 27, 2006, Dr. Jorgenson ordered another MRI and finally determined conclusively that he had operated at the wrong level. Dr. Jorgenson testified in his deposition that he informed Stuard of this fact on November 20, 2006, stating in his deposition:
I told him that we had intended to operate on the T6-7 level. And it appears from the x-rays that we had inadvertently operated on the T5-6 level. As a consequence, he still had the same pathology and same herniation at the T6-7 level as he had
Stuard then consulted Dr. Tyler Frizzell, M.D., who performed surgery to remove the plate and some of the hardware from the T56 level and execute the correct procedure at the T6-7 level.
Stuard filed an application for the convening of a prelitigation screening panel with the Idaho State Board of Medicine on April 2, 2007. He filed his Complaint and Demand for a Jury Trial for medical malpractice against Dr. Jorgenson on February 14, 2008.[3] Dr. Jorgenson answered, raising the statute of limitations as a defense. Stuard filed an Amended Complaint on December 10, 2008 and Dr. Jorgenson answered. Dr. Jorgenson filed a motion for summary judgment on February 17, 2009, arguing that the action was barred by the statute of limitations contained in I.C. § 5-219(4), which was granted by the district court. The court held that the action accrued at the time of the surgery because the ongoing presence of the herniated disk, and the other injuries from the surgery itself, were objectively ascertainable at that time, and therefore the action was barred. It also held that the foreign-object exception did not apply to the hardware installed at the wrong level, and even if it did, the action was still untimely because the Complaint and Demand for Jury Trial were not filed until February 14, 2008. Judgment was entered on July 14, 2009, and Stuard timely filed a notice of appeal. Stuard filed a Motion for Reconsideration arguing that the action was timely if the foreign-object exception applied because the filing of a Prelitigation Claim with the Idaho State Board of Medicine tolls the statute of limitations under I.C. § 6-1005.[4] The district court issued an Amended Memorandum Decision and Order, *704 limiting its holding regarding the foreign-object exception to the determination that it did not apply, and maintaining its other holdings.
III.Issues on Appeal
1. Whether there was a genuine issue of material fact as to whether “some damage” was “objectively ascertainable” at the time the first surgery was negligently performed such that the action accrued at that time under I.C. § 5-219.
2. Whether the locking plate and other hardware installed at the wrong spinal level constitute a “foreign object” under I.C. § 5-219, such that the discovery rule would apply.
IV.Standard of Review
Summary judgment is proper “if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” I.R.C.P. 56(c). “If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.” Watson v. Weick, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005). When there is conflicting evidence as to when the cause of action accrued, the issue is one for the trier of fact. Id. The statute of limitations is an affirmative defense and the defendant has the burden of establishing the elements necessary to establish the defense. Hawley v. Green, 117 Idaho 498, 504, 788 P.2d 1321, 1327 (1990).
Within two (2) years ... An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5-243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5-241, Idaho Code.
V.Analysis
“An action to recover damages for ‘professional malpractice’ must be commenced within two years after the cause of action has accrued.” Conway v. Sonntag, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005); I.C. § 5-219(4).[5] The cause of action accrues “as of the time of the occurrence, act or omission complained of’ unless it is based upon leaving a foreign object in a patient’s body or fraudulent concealment of damage. I.C. § 5-219(4). Fraudulent concealment is not alleged here. If the “foreign object” exception applies, the cause of action only accrues once the plaintiff “knows or in the exercise of reasonable care should have been put on inquiry” of the injury. I.C. § 5-219(4). Otherwise, “[i]n most cases, the act or omission complained of and the injury to the plaintiff occur at the same time, particularly in the medical context.” Davis v. Moran, 112 Idaho 703, 708, 735 P.2d 1014, 1019 (1987). However, this Court has held that *705 there must be “some damage” before the action begins to accrue. Lapham v. Stewart, 137 Idaho 582, 586, 51 P.3d 396, 400 (2002).
A. The Action Accrued at the Time the First Surgery Was Negligently Performed Because “Some Damage” Was “Objectively Ascertainable” at That Time.
Assuming first that the “foreign object” exception does not apply, this Court has recognized that a professional malpractice action only accrues once there has been “some damage.” Conway, 141 Idaho at 146, 106 P.3d at 472; Streib v. Veigel, 109 Idaho 174, 178, 706 P.2d 63, 67 (1985). In Davis v. Moran, this Court stated that the damage must be “objectively ascertainable.” 112 Idaho at 709, 735 P.2d at 1020. In that case, the Court explained that “objectively ascertainable” means “that objective medical proof would support the existence of an actual injury.” Id. at 709 n. 4, 735 P.2d at 1020 n. 4.[6] Subsequent decisions by this Court have recognized that “[t]he existence of ‘objectively ascertainable injury[5] is simply an analytical tool to be used in determining when ‘some damage’ has occurred.” Conway, 141 Idaho at 146-47, 106 P.3d at 472-73 (citing Lapham, 137 Idaho at 587, 51 P.3d at 401). “[T]he ‘some damage’ that has occurred must be damage that the client could recover from the professional in an action for malpractice.” City of McCall v. Buxton, 146 Idaho 656, 659, 201 P.3d 629, 632 (2009). Further, the statute makes clear that any “continuing consequences” of the act or omission do not extend the limitations period. I.C. § 5-219(4).
Stuard argues he did not suffer any damage until Aug. 31, 2006, the date of his second work-related injury, because he did not have any symptoms or knowledge of the negligence of Dr. Jorgenson until that time. The facts of this case are admittedly unique, in that neither party can explain why Stuard’s symptoms subsided when his herniated disk injury was not correctly treated. However, this Court has made very clear that “[w]hether there was some damage, or whether that damage was objectively ascertainable, does not depend upon the knowledge of the injured party” because such dependence would effectively create a discovery rule, which the legislature has expressly rejected. Lapham, 137 Idaho at 587, 51 P.3d at 401. Therefore, subjective knowledge of Stuard’s injury is not relevant to the determination of when “some damage” occurred under Idaho’s clear legislative direction and the case law following it. See Chicoine v. Bignall, 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992). Stuard seems to equate “symptoms” with “damage.” However, symptoms are by nature subjective, and therefore are not determinative in an “objective” analysis such as the one this Court has stated is the standard for evaluating the accrual of a professional malpractice claim.
In its decision, the district court noted the damages that occurred because of the negligent surgery, including the removal of healthy tissue and the installation of hardware at the wrong level. The fact that these injuries occurred was not disputed. There may have been additional consequences of Dr. Jorgenson’s negligent surgery in the failure to recognize his mistake in his subsequent visits with Stuard, but the consequences from Stuard and Dr. Jorgenson’s continuing relationship do not extend the lim *706 itations period. I.C. § 5-219(4) (“[T]he limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer.”). The negligent act was the performance of the surgery at the wrong level. The injury was the removal of healthy tissue and installation of medical hardware at the wrong level. Idaho Code § 5-219 does not allow for a separate statute of limitation for each injury that occurs from the negligence, it allows for one cause of action that accrues once the act and injury have occurred.
Stuard argues in his brief that the lack of medical records in the evidence depicting that the surgery was negligently performed at the wrong level indicate that there was not some damage that was objectively ascertainable. The language of Davis defining “objectively ascertainable” to mean “that objective medical proof would support the existence of an actual injury,” means that the existence of the injury is capable of being objectively ascertained. Davis, 112 Idaho at 709 n. 4, 735 P.2d at 1020 n. 4. To allow for accrual to begin only once the parties have been put on notice of the damage, or in other words, once the damage is actually “ascertained” would effectively create a discovery rule, which the legislature has rejected. Dr. Jorgenson provided expert testimony in the form of a sworn affidavit that the injury was objectively ascertainable at the time of the surgery. He also stated in his deposition that because the surgery was performed at the wrong level, Stuard “had the same pathology and same herniation at the T6-7 level as he had before.” Stuard has not provided any conflicting expert testimony to state that the injury was not objectively ascertainable at that time, or that the negligence and ensuing injury to Stuard because of that negligence did not exist or would not have been discovered had an MRI been taken immediately following the surgery. According to the evidence in the record, the injury was thus “objectively ascertainable” at the time of the surgery, because had objective medical proof in the form of an MRI been ordered, it would have shown the surgery was performed at the wrong level, and that Stuard had suffered damages as a result of its performance at the wrong level.
Stuard suffered objectively ascertainable damages from the surgery itself. As shown in the documentation of the surgery, Stuard’s back was cut into, healthy tissue was negligently removed, and a locking plate, screws, and other hardware were negligently placed at the wrong spinal level. Had Stuard’s claim survived the motion for summary judgment and gone to trial, he likely would have asked for compensation for these damages from the negligent surgery.[7] Thus, these damages satisfy the “some damage” standard. Buxton, 146 Idaho at 659, 201 P.3d at 632.
Therefore, the district court properly concluded that there was no genuine issue of fact that the cause of action accrued on July 15, 2004, the date of the negligently performed surgery. In its original decision, the district court failed to recognize that I.C. § 6-1005 tolls the statute of limitations “upon the filing of a request for a prelitigation screening panel, during the time the claim is pending before the panel, and for thirty days thereafter.” Conway, 141 Idaho at 146, 106 *707 P.3d at 472. Thus, in order not to be barred by the statute of limitations, the prelitigation screening request or the Complaint must have been filed by July 15, 2006. The prelitigation screening request was not filed until April 2, 2007, and the Complaint was not filed until February 14, 2008. Therefore, Stuard’s claim for medical malpractice is barred. While this application is indeed harsh given that Stuard did not himself know the operation was negligently performed, his arguments are better to be taken up with the legislature in the adoption of a discovery rule for all medical malpractice claims. This Court has no power to create such a rule by judicial fiat. The statute and this Court’s ease law, as it stands, are clear that the statute of limitations accrues once some damage that is objectively ascertainable occurs.
The Dissent likens this case to this Court’s application of the “some damage” rule in two legal malpractice cases, Chicoine and Buxton. However, the financial injuries suffered as a result of the alleged legal malpractice in those cases are distinguishable from the personal injury suffered as a result of the medical malpractice in this case. In Chicoine, the Court found that Chicoine could not have suffered any damages as a result of the lawyer’s negligence in not timely filing a motion for new trial until this Court reversed the district court’s grant of the motion for new trial, because the grant of the new trial insulated Chicoine from any damages caused by the untimely filing. Chicoine, 122 Idaho at 487, 835 P.2d at 1298. Essentially, no injury had been caused by Chicoine’s lawyer’s malpractice so long as Chicoine was assured of a new trial, and therefore he could not yet have suffered any damages as a result of the negligence. Had the grant of the motion for new trial never been reversed, Chicoine would not have been able to bring his legal malpractice claim. In Buxton, the Court held that “the existence or effect of any alleged negligence on the part of the City’s Attorneys regarding their legal advice and strategy depended upon the outcome of the litigation against the City” that was brought as a result of that bad advice. 146 Idaho at 663, 201 P.3d at 636. The Court reasoned that “it would be difficult to conceive of a situation in which the City could have recovered on a malpractice claim against its Attorneys had the City prevailed in the litigation.” Id. at 662, 201 P.3d at 635. Basically, should the City have won those lawsuits it would have had no injury as a result of the bad legal advice under which to bring a negligence claim. The case at hand is distinguishable from both of those cases because an injury occurred immediately as a result of the medical malpractice of Dr. Jorgenson: the opening of the body by incision, the removal of otherwise healthy tissue and the installation of hardware at the wrong level. Stuard had a medical-malpractice claim for these injuries and the damage from them as soon as the negligent surgery occurred. His claim thus accrued at that time.
B. The Locking Plate and Other Hardware Installed During Surgery Do Not Constitute a Foreign Object Under I.C. § 5-219 Because They Were Intentionally Left in Stuard’s Body.
Stuard argues that the locking plate and other hardware installed into Stuard’s spine at the wrong level constituted a “foreign object” under I.C. § 5-219. The foreign object exception contained within I.C. § 5-219 provides that the discovery rule will apply to the “placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person.” I.C. § 5-219(4). Under the discovery rule, the statute of limitations would only accrue once “the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of.” Id.
The locking plate and other hardware are not a foreign object because they were intentionally left in Stuard’s body. In the Court of Appeals’ decision in Ogle v. De Sano, 107 Idaho 872, 693 P.2d 1074 (CtApp. 1984), the court found that an I.U.D.[8] was not a foreign object because it was “intentionally placed in a woman’s body with her consent, ... has a continuing medical function, and *708 ... will be removed when its function is no longer needed.” 107 Idaho at 875, 693 P.2d at 1077. Therefore, the court reasoned, I.C. § 5-219(4) excludes from the definition of foreign objects “such devices deliberately placed in the body, with the patient’s knowledge and consent, which are within the body intentionally.” Id. Idaho Code § 5-219, by its very language, contemplates that the “leaving” of the object in the body must be “inadvertent, accidental or unintentional.” I.C. § 5-219. This Court accordingly adopts the Court of Appeals’ holding in Ogle that a medical device which is placed in the body intentionally for the purpose of medical treatment is not a “foreign object” under the statute. Accord Hall v. Ervin, 642 S.W.2d 724, 726-28 (Tenn.1982) (exception does not apply to an object which had been deliberately implanted in the body); Hills v. Aronsohn, 152 Cal.App.3d 753, 199 Cal.Rptr. 816, 823-24 (1984) (substance or object that is intentionally introduced into the body for therapeutic purposes is not a “foreign object”); LaBarbera v. N.Y. Eye & Ear Infirmary, 91 N.Y.2d 207, 668 N.Y.S.2d 546, 691 N.E.2d 617, 620-21 (1998) (stent placed in body for medical purposes not a “foreign object”); Goldsmith v. Houmedica, Inc., 67 N.Y.2d 120, 500 N.Y.S.2d 640, 491 N.E.2d 1097, 1098-99 (1986) (prosthetic device implanted in patient’s hip not a “foreign object”); 61 Am.Jur.2d Physicians, Surgeons, Etc. § 302 (2002).
This Court’s prior decisions regarding the “foreign object” exception also support the view that the object must be negligently left in order for the exception to apply. See Billings v. Sisters of Mercy, 86 Idaho 485, 497-98, 389 P.2d 224, 232 (1964) (gauze sponge inserted during surgery negligently left there); Stoner v. Carr, 97 Idaho 641, 642-44, 550 P.2d 259, 260-62 (1976) (surgical needle negligently left in patient’s abdomen); Reis v. Cox, 104 Idaho 434, 438-40, 660 P.2d 46, 50-52 (1982) (fragment from a medical drain negligently left in body). The Court of Appeals noted in Ogle that in each of these instances, the “foreign object” was “left in the patient’s body from previous operations.” Ogle, 107 Idaho at 875, 693 P.2d at 1077.
Stuard argues that because the locking plate and other hardware were installed as a result of Dr. Jorgenson’s negligence, they were “inadvertently left.” However, the statute and case law cited require that the inadvertence be in the leaving of the foreign object, not in the performance of the surgery. The statute already applies to malpractice cases, and thus every defendant under the statute will have already acted negligently, and the language of inadvertence in the foreign object exception in the statute would simply be redundant under Stuard’s view. Dr. Jorgenson intentionally placed the locked plate and other hardware into Stuard’s body and intentionally left it in his body. The fact that he acted negligently in placing them at the wrong level does not trigger the foreign object exception under the plain language of the statute.
Further, the hardware was placed into Stuard’s body with his consent and for a medical purpose. While the hardware was not intended to be installed at the wrong level, it was intended to serve a medical purpose to fuse the spine together. Stuard has not included a copy of the informed-consent form in the record, and therefore we cannot speculate as to whether it contained limiting language as to his consent. He admits he consented to the surgery and to the placement of the hardware within his body for the medical purpose of fusing his spine and treating his herniated disk, albeit not at the wrong level. Therefore, this Court holds that the foreign object exception does not apply here.
Neither party requests attorney fees on appeal and accordingly none will be awarded.
VI. Conclusion
This Court affirms the district court’s grant of summary judgment. Stuard’s malpractice action accrued at the time of the surgery because some damage was objectively ascertainable at that time. Further, the “foreign object” exception does not apply because the locking plate and other hardware were intentionally left within the body for the purpose of medical treatment. No attorney *709 fees are awarded on appeal. Costs to Dr. Jorgenson.
Chief Justice EISMANN and Justice HORTON concur.

. The "level” refers to both the area of the spine and the specific part of the spine in that area. The spine is split into four areas: cervical, thoracic, lumbar and sacral, starting at the top of the spine. The number is assigned by counting down the vertebrae of the spine in that area. Stuard's injury occurred in the thoracic area.

. According to Dr. Jorgenson's deposition testimony, the chest x-rays show only a portion of the spine and therefore Dr. Jorgenson did not "have the ability to count levels and to accurately assess the actual levels where the hardware was placed.”

. His wife, Jeanne Stuard, is also listed as a Plaintiff/Appellant, and has alleged loss of "services, society, care, comfort and companionship of her husband, Plaintiff Patrick Stuard.” For purposes of clarity, Appellants will be referred to as "Stuard” in the singular rather than the plural.

. Idaho Code § 6-1005 provides:
There shall be no judicial or other review or appeal of such matters. No party shall be obliged to comply with or otherwise [be] affect-before. And that’s what I believe is causing his current symptoms. ed or prejudiced by the proposals, conclusions or suggestions of the panel or any member or segment thereof; however, in the interest of due consideration being given to such proceedings and in the interest of encouraging consideration of claims informally and without the necessity of litigation, the applicable statute of limitations shall be tolled and not be deemed to run during the time that such a claim is pending before such a panel and for thirty (30) days thereafter.

. I.C. § 5-219(4) provides:

. In Davis, it was unclear when the actual injury from the negligent radiation treatment had occurred. Therefore, the Court required objective medical proof in order to determine when the "real injury” occurred. Davis, 112 Idaho at 709, 735 P.2d at 1020. Davis specifically recognized the "unique problem posed by ... radiation exposure cases,” which is that "the injury does not occur at the moment of radiation.” Id. The facts here do not involve radiation, and it is not disputed that because the surgery was performed at the wrong level, otherwise healthy tissue was removed and hardware was installed at the wrong level. Similarly, in Brennan v. Owens-Coming Fiberglas Corp., 134 Idaho 800, 802, 10 P.3d 749, 751 (2000), this Court held that the accrual of a cause of action for injuries related to asbestosis did not occur until an x-ray of the patient’s chest showed scarring, giving "objective medical proof that would support the existence of an actual injury resulting from exposure to asbestos.” Id. That case involved the unique circumstances of asbestos, where the existence of an "actual injury” is completely unknown to anyone until a symptom occurs. This case is distinguishable because the "existence of an actual injury,” the removal of healthy tissue and installation of hardware at the wrong level, was capable of being ascertained at the time of the negligence.

. In his Amended Complaint, Stuard asked for several damages from the court. The Damages section of his Amended Complaint states:
As a result of Defendant’s acts of negligence, recklessness and gross negligence as defined herein, Plaintiffs are entitled to recover all damages allowed by law, including, but not limited to:
a. Loss of the past and future expenses for the provision of medical care, treatment, therapy, prescriptions and other health care services and products, in an amount to be proven at trial;
b. For physical, mental and emotional injuries suffered by Plaintiff Patrick Stuard in the past, and for those damages he will suffer in the future, in an amount to be proven at trial;
c. For past and future loss of earning capacity, income and/or expenses associated with the surgeries, disabilities and impairments caused by Defendant’s wrongful conduct;
d. With regard to Plaintiff Jeanne Stuard, for the loss of the services, comfort, care, soci- ' ety and companionship of her husband, Plaintiff Patrick Stuard; and
e. For such other damages as may be given as under all the circumstances of the case as may be just.

. I.U.D. stands for Intrauterine Device, and is "a device inserted and left in the uterus to prevent effective conception.” Merriam-Webster's Collegiate Dictionary 657 (11th ed. 2007).