**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42519**

| | | |
|---|---|---|
| JEFFERY A. BAKER, | ) | 2015 Unpublished Opinion No. 561 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: July 20, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ST. LUKE'S REGIONAL MEDICAL | ) | THIS IS AN UNPUBLISHED |
| CENTER, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Lee Hansen, District Judge.

Judgment dismissing complaint for medical malpractice, <u>affirmed</u>.

Jeffery A. Baker, Boise, pro se appellant.

Gjording Fouser, PLLC; Trudy Hanson Fouser; Randall L. Schmitz, Boise, for respondent.

_____

GUTIERREZ, Judge

Jeffery A. Baker appeals pro se from the judgment of the district court dismissing his medical malpractice complaint after granting summary judgment to St. Luke's Regional Medical Center and after denying Baker's motion for reconsideration. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

This case concerns Baker's allegation of medical malpractice with respect to his daughter, Gracelynn. According to documents in the record, Gracelynn, who was less than three months old, was admitted to St. Luke's in an unresponsive state on May 10, 2010. She died days later on May 14. Baker was arrested on May 17, apparently under suspicion for the murder of Gracelynn. In April 2013, Baker was found guilty of the first degree murder of Gracelynn in the

1

perpetration of an aggravated battery.[1]  From the record, it appears that the prosecution's theory of the case asserted that Gracelynn died from shaken baby syndrome.

In September 2013, more than three years after Gracelynn died, Baker filed a pro se complaint against St. Luke's, listing as plaintiffs Gracelynn and himself, as the parent of Gracelynn.  That complaint alleged what it delineated as four claims.  The first claim asserted medical malpractice when St. Luke's improperly placed Gracelynn's endotracheal tube; Baker explained that he discovered this claim in September 2011 when he received a copy of a deposition of a professor and neuroradiologist.  The second claim averred that one of St. Luke's doctors falsely reported medical evidence about Gracelynn's death.  Specifically, that the doctor testified in Baker's criminal trial that Gracelynn had a torn brain stem.  The third claim explained that St. Luke's did not report "the hypoxic brain insult caused by the defendant's negligence to any authority investigating possible causes [(of death)] related to this case."  The last claim noted that Gracelynn actually had central vein thrombosis.

St. Luke's filed a motion to dismiss, asserting that Baker had failed to state a claim upon which relief could be granted because the statute of limitations barred the claim.  Baker responded by filing an affidavit, acknowledging that he knew of the incorrect placement of the endotracheal tube in September 2011, but averring that he did not know "of the defendants lying about a torn brain stem" until April 2013.  The district court, after a hearing on the motion,[2] entered an order granting summary judgment to St. Luke's, explaining that it had considered Baker's affidavit in reaching its decision.  In that order, the court treated Baker's complaint as alleging one claim of medical malpractice, but also averring that the fraudulent concealment exception to the general statute of limitations rule applied.  It found that Baker's claim was barred by the statute of limitations and determined that even if the fraudulent concealment exception applied, Baker's complaint was still filed beyond the statute of limitations.

After the court entered a judgment dismissing the complaint, Baker filed what he entitled a motion to alter or amend the judgment.  Both parties then filed memoranda, affidavits, and exhibits in support of or in opposition to the motion.  The district court treated the motion as a

---

[1]    According to Baker, his first trial ended in a mistrial, but his second trial ended in a guilty verdict.

[2]    For the first time, Baker argued at the hearing on the motion to dismiss that the doctrine of equitable estoppel barred St. Luke's from asserting the statute of limitations.

2

motion for reconsideration and, following a hearing, entered an order denying the motion. In that order, the court addressed Baker's assertion that equitable estoppel applied, but found that Baker had not made a prima facie showing of equitable estoppel; it also determined that even if Baker had made a prima facie showing, equitable estoppel would not apply because Baker had an adequate time to pursue his legal remedies prior to the running of the statute of limitations. The court, again, found that the complaint was filed beyond the statute of limitations and determined that even if the fraudulent concealment exception applied, Baker's complaint was still filed beyond the applicable statute of limitations. The court reentered a judgment dismissing Baker's complaint, and Baker appeals.

## II.

## ANALYSIS

On appeal, Baker argues that the district court erred by granting summary judgment to St. Luke's. We first note that summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been

3

established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* have been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

Baker initially asserts that the district court erred by disregarding the separate claims in his complaint. The district court characterized the complaint as asserting one claim of medical malpractice with other averments in support of the fraudulent concealment exception and the doctrine of equitable estoppel (discussed by Baker at a later hearing). Baker, however, does not cite to the record where he objected to the district court's characterization of the complaint. We will, therefore, not address this issue on appeal because Baker has not demonstrated that he preserved this issue through an objection in the district court. *See* Idaho Appellate Rule 35(a)(6) (requiring parties to cite to the record that they rely upon for their argument); *see also Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (explaining that, generally, issues not raised below may not be considered for the first time on appeal).

Baker's primary contention on appeal is that the district court erred by determining that the statute of limitations barred his claim. Baker maintains that the cause of action did not

4

accrue until 2013 and further asserts that the fraudulent concealment exception applies. He also argues that equitable estoppel applied to St. Luke's assertion of the statute of limitations.[3]

## A. Statute of Limitations

Unless an exception applies, medical malpractice actions are subject to a two-year statute of limitations that arises after the cause of action accrues.[4] I.C. § 5-219(4); *Stuard v. Jorgenson*, 150 Idaho 701, 704, 249 P.3d 1156, 1159 (2011). The cause of action accrues when there is "some damage" from the act, omission, or occurrence complained of. *Stuard*, 150 Idaho at 704-05, 249 P.3d at 1159-60. "In many medical malpractice cases, the damage occurs contemporaneously with the negligent act." *Hawley v. Green*, 117 Idaho 498, 502, 788 P.2d 1321, 1325 (1990). But in some cases, the Idaho Supreme Court has recognized that "the damage may not occur until some time after the negligent act." *Id.* Hence, the Court has utilized an analytical tool to determine whether some damage has occurred in these cases by examining whether the fact of injury was objectively ascertainable. *Stuard*, 150 at 705, 249 P.3d at 1160. Specifically, the Court has examined whether there is "objective medical proof [that] would support the existence of an actual injury." *Davis v. Moran*, 112 Idaho 703, 709 n.4, 735 P.2d 1014, 1020 n.4 (1987); *accord Stuard*, 150 Idaho at 705, 249 P.3d at 1160.

In this case, there is no genuine issue of material fact as to the timeliness of the complaint. Baker's complaint is based on his assertion that an endotracheal tube was improperly positioned in Gracelynn on May 10, 2010, and on May 11, 2010. This is the act complained of, and it appears to be Baker's contention that the improperly placed tube was the cause of Gracelynn's death. Because Gracelynn died on May 14, "some damage" to Gracelynn would have occurred at the latest on May 14. Thus, the cause of action would have accrued at the latest on May 14, 2010. Even accounting for the I.C. § 6-1005 tolling for the prelitigation screening panel, Baker's complaint, filed more than three years later in September 2013, was filed beyond the statute of limitation.

---

[3]     In his reply brief, it appears that Baker also challenges the denial of his motion to augment the record. However, this Court will not consider issues raised for the first time in the appellant's reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

[4]     Prior to commencing a medical malpractice action, a plaintiff is also required to file a request with a prelitigation screening panel. I.C. § 6-1001. The applicable statute of limitations is tolled and does not "run during the time that such a claim is pending before [the] panel and for thirty (30) days thereafter." I.C. § 6-1005.

Baker, however, argues that "objective medical proof of an actual injury" was not available until April 2013 when an expert witness testified during his criminal trial that it was her opinion that Gracelynn's death was caused by oxygen deficiency. Yet, this assertion is irrelevant, because the damage does not need to be ascertainable to the plaintiff. *Hawley*, 117 Idaho at 503, 788 P.2d at 1326. "Whether there was some damage, or whether that damage was objectively ascertainable, does not depend upon the knowledge of the injured party." *Lapham v. Stewart*, 137 Idaho 582, 587, 51 P.3d 396, 401 (2002); *accord Davis*, 112 Idaho at 709, 735 P.2d at 1020. The test to determine whether the damage is objectively ascertainable is useful "where the functional defect (and its symptomology) does not occur at all until a later time." *Davis*, 112 Idaho at 708, 735 P.2d at 1019. For instance, the Idaho Supreme Court discussed radiation, noting that "a given dose of radiation may or may not set into motion the chain of events which leads to the real injury some years later." *Id.* at 709, 735 P.2d at 1020. But for Gracelynn, who is the injured party, "some damage" would have occurred to her at the latest by her death and the injury would have been objectively ascertainable between the alleged act and her death.

One of the exceptions to the general statute of limitations rule for medical malpractice cases--the fraudulent concealment exception--is asserted by Baker. This exception applies "when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party." I.C. § 5-219(4). Under the exception, the cause of action accrues "when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of." *Id.* The "condition or matter complained of" refers to "the condition which ultimately is alleged to constitute the malpractice or negligence of the doctor." *Reis v. Cox*, 104 Idaho 434, 438, 660 P.2d 46, 50 (1982). If the exception applies, the statute of limitations requires that the action be commenced by the later of (a) one year from when the cause of action accrues under the exception or (b) two years after the act, occurrence, or omission complained of (disregarding the exception). I.C. § 5-219(4).

Even if Baker made a prima facie showing of fraudulent concealment, the cause of action would have still accrued when he knew of the act that was alleged to constitute the malpractice. Baker's complaint and affidavit state that he was aware of the condition or matter complained of--the improperly placed endotracheal tube--in September 2011. Thus, the cause of action under

6

the exception would have accrued at that time, and the statute of limitations would have run in May 2013. Accounting for the I.C. § 6-1005 tolling for the prelitigation screening panel, Baker's complaint in September 2013 was filed beyond the statute of limitations that would apply, even if Baker made a prima facie showing of fraudulent concealment. Although Baker asserts that St. Luke's concealed, presumably until April 2013, the "fact of the danger of injury resulting from the 'extreme hypoxia' that resulted from the malpositioned ET tube," this assertion is inapposite because Baker knew of the condition or matter complained of in September 2011.

**B.    Equitable Estoppel**

Finally, Baker contends that equitable estoppel bars St. Luke's from asserting the statute of limitations defense. Equitable estoppel is the only nonstatutory bar to the statute of limitations defense. *City of McCall v. Buxton*, 146 Idaho 656, 663, 201 P.3d 629, 636 (2009). It bars the defendant from "asserting the statute of limitations as a defense for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth." *Id.* at 664, 21 P.3d at 637. In order to make a prima facie case of equitable estoppel, the plaintiff must show four elements:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 534, 887 P.2d 1039, 1041 (1994).

According to Baker's appellate brief, St. Luke's falsely represented Gracelynn's cause of death as shaken baby syndrome or abusive trauma when a doctor testified at Baker's criminal trial that Gracelynn died from a brainstem infarction "when in fact, no such injury was discovered." Baker further explains that he did not know of the truth until "testimony by a qualified expert" was produced in April 2013. And finally, Baker avers that his defense at his criminal trial would have been different had St. Luke's disclosed the improper placement of the endotracheal tube.

Even assuming that Baker made a prima facie showing of the first two elements of equitable estoppel, Baker did not make a prima facie showing of the third and fourth elements. Here, the false representation alleged by Baker related to testimony made at his criminal trial and

7

relied on by the State, not by Baker. And, in any event, equitable estoppel bars the defendant from asserting the statute of limitations as a defense for a reasonable time after the plaintiff discovers or reasonably could have discovered the truth. Here, Baker admitted that he knew of the incorrect placement of the endotracheal tube in September 2011, before the statute of limitations ran, and he did not file his complaint until September 2013. This timeframe amounted to more than a reasonable time for Baker to exercise due diligence and commence a medical malpractice action. *Cf. Ferro v. Society of St. Pius X*, 143 Idaho 538, 544, 149 P.3d 813, 819 (2006) (concluding that equitable estoppel did not apply because Ferro reasonably should have known of the circumstances and he "did not proceed with due diligence in filing [the] lawsuit"); *Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996) ("Knudsen knew of the wiretapping prior to the running of the statute of limitations with adequate time prior to the running of the statute of limitations for her to have pursued her legal remedies.").

### III.

### CONCLUSION

In this case, there is no genuine issue of material fact with respect to the timeliness of the complaint. St. Luke's was entitled to judgment as a matter of law because Baker's complaint was filed beyond the statute of limitations, even if the fraudulent concealment exception applied. Moreover, Baker did not make a prima facie showing that equitable estoppel applied. Accordingly, we affirm the judgment of the district court dismissing Baker's complaint. Costs, as a matter of right, are awarded to St. Luke's. I.A.R. 40.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.

8