# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43730

JOHN E. WYMAN, an individual, and
MARGO WYMAN, an individual,

      Plaintiffs-Appellants,

v.

JOHN J. ECK, M.D., an individual,
JULIE L. SCOTT, PA-C, an individual,
CENTER FOR LIFETIME HEALTH, LLC,
and JOHN DOES 1-10,

      Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2017 Term

2017 Opinion No. 23

Filed: February 28, 2017

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. James C. Morfitt, District Judge.

District Court order granting summary judgment, <u>affirmed</u>.

Robert J. DeBry & Associates, Salt Lake City, Utah, for appellants. Brook Millard argued.

Quane Jones McColl, PLLC, Boise, for respondents. George R. Lyons argued.

---

BURDICK, Chief Justice

     John and Margo Wyman appeal the Ada County district court's grant of summary judgment to Dr. John J. Eck, Julie L. Scott, P.A., and Center for Lifetime Health, LLC (Respondents). The Wymans sued Respondents for various medical malpractice claims arising from Respondents' alleged failure to diagnose John's cancer. The district court concluded Idaho Code section 5-219(4)'s two-year statute of limitations barred the Wymans' claims. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

     On December 22, 2011, John Wyman first visited Julie L. Scott, P.A., to address a lesion he had discovered on his left heel. P.A. Scott diagnosed the lesion as an infected wart, prescribed antibiotic ointment, and instructed John to return for a follow-up appointment, scheduled for January 5, 2012. For reasons unclear, John did not attend the follow-up appointment.

1

John returned to see P.A. Scott on April 19, 2012, because his lesion did not improve. Still believing the lesion was an infected wart, P.A. Scott froze it off during that appointment. She again instructed John to return for a follow-up appointment, scheduled for May 10, 2012. For reasons unclear, John did not attend the follow-up appointment. He never again returned to see P.A. Scott.

John's lesion, however, failed to improve. John visited a dermatologist, Dr. Jason Scott, on August 31, 2012. Dr. Scott performed a shave biopsy of the lesion during that appointment. The biopsy revealed the lesion was a malignant melanoma tumor, not an infected wart. In fact, when John's oncologist, Dr. Hung Khong, reviewed the biopsy, he diagnosed John's "malignant melanoma as a Stage IIIC."

Nearly two years after the date of the biopsy, on August 28, 2014, the Wymans filed a pre-litigation screening application with the Idaho State Board of Medicine. On September 5, 2014, the Wymans lodged a complaint in district court, alleging medical malpractice claims against P.A. Scott and her employer, Center for Lifetime Health, LLC, for their alleged failure to perform a biopsy that would have revealed cancer. On November 18, 2014, the Wymans filed an amended complaint, which alleged claims against P.A. Scott's supervisor, Dr. John J. Eck, for failure to supervise under Idaho Code section 54-1807A.

Respondents filed a summary judgment motion on February 3, 2015. In that motion, Respondents argued Idaho Code section 5-219(4)'s two-year statute of limitations barred the Wymans' claims. The district court denied that motion, finding that Respondents had "failed to produce 'objective medical proof' that 'any damage was occurring at the time the defendants' allegedly failed to diagnose the condition.'"

Respondents filed a renewed summary judgment motion on July 24, 2015. Again, they argued Idaho Code section 5-219(4)'s two-year statute of limitations barred the Wymans' claims. But, with that motion, Respondents submitted expert testimony by way of an affidavit from Dr. Gregory Wells, a dermatologist and dermatopathologist. Dr. Wells testified that John's cancer was objectively ascertainable on or before December 22, 2011, the date of his first appointment with P.A. Scott. The Wymans opposed the motion by relying on the deposition testimony of John's oncologist, Dr. Khong. According to Dr. Khong, "without a biopsy there could be no diagnosis of [John's cancer]." As such, the Wymans contended John's cancer did not become objectively ascertainable until August 31, 2012—the date of the biopsy.

The district court granted Respondents' renewed summary judgment motion, reasoning that Dr. Khong's deposition testimony did not contradict Dr. Wells's affidavit, and as such, no triable issue of fact existed. The Wymans timely appeal.

## II.    ISSUES ON APPEAL

1.    Did the district court err by granting summary judgment to Respondents?
2.    Should attorney fees on appeal be awarded to Respondents?

## III.    STANDARD OF REVIEW

On review of a summary judgment order, this Court employs the same standard used below. *J-U-B Eng'rs, Inc. v. Sec. Ins. Co. of Hartford*, 146 Idaho 311, 314–15, 193 P.3d 858, 861–62 (2008). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "This Court liberally construes all disputed facts in favor of the non-moving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion." *J-U-B*, 146 Idaho at 314, 193 P.3d at 861.

## IV.    DISCUSSION

We address two main issues on appeal. First is whether the district court properly granted summary judgment to Respondents on the basis that the Wymans' claims are untimely. Second is whether Respondents are entitled to attorney fees on appeal.

**A.    The district court properly granted summary judgment to Respondents.**

The Wymans contend summary judgment was improper because triable issues of fact surround whether their claims are timely. Because the Wymans seek to bring claims for medical malpractice, Idaho Code section 5-219(4)'s two-year statute of limitations governs our inquiry in this case. We recently articulated the analysis under Idaho Code section 5-219(4) as follows:

> Pursuant to Idaho Code section 5-219(4), "[a]n action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Conway v. Sonntag*, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005). Under the statute, the cause of action accrues "as of the time of the occurrence, act or omission complained of" and "shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer." I.C. § 5-219(4); *see Conway*, 141 Idaho at 146, 106 P.3d at 472. Nevertheless, in a negligence action, because the plaintiff must prove actual damage, the statute of limitations cannot begin to run until some damage has occurred as a result of the alleged malpractice. *See Hawley v. Green*, 117 Idaho

3

498, 502, 788 P.2d 1321, 1325 (1990); *Streib v. Veigel*, 109 Idaho 174, 178, 706 P.2d 63, 67 (1985).

> In *Davis v. Moran*, this Court explained that when determining whether "some damage" has occurred, the trial court is to identify the point at which the "fact of injury becomes objectively ascertainable." 112 Idaho 703, 709, 735 P.2d 1014, 1020 (1987). By "objectively ascertainable," "we mean that objective medical proof would support the existence of an actual injury." *Id.* at 709 n.4, 735 P.2d at 1020 n.4. The concept of an " 'objectively ascertainable injury' is simply an analytical tool to be used in determining when 'some damage' has occurred." *Conway*, 141 Idaho at 146–47, 106 P.3d at 472–73.

*Conner v. Hodges*, 157 Idaho 19, 23–24, 333 P.3d 130, 134–35 (2014). Although Idaho Code section 5-219(4) is interpreted "flexibly to avoid absurd results," a discovery rule—which begins to run once the plaintiff knows or should know of the injury—has been "consistently rejected." *Hawley v. Green*, 117 Idaho 498, 503, 788 P.2d 1321, 1326 (1990).

Because the Wymans filed their pre-litigation screening application on August 28, 2014, our discrete inquiry is whether John's cancer became objectively ascertainable before August 28, 2012. The Wymans contend John's cancer did not become objectively ascertainable until the biopsy was performed on August 31, 2012. Since the biopsy is what actually revealed John's cancer, the Wymans maintain that "there can be no proof that [John] suffered harm prior to that date." To that end, the Wymans rely on the deposition testimony of John's oncologist, Dr. Khong, who testified that "the only way you can actually diagnose malignant melanoma is through [a] biopsy[.]" Thus, Dr. Khong further explained that "without a biopsy there could be no diagnosis of [John's cancer]."

The Wymans' position is unavailing. Instead, we conclude the undisputed material facts show that John's cancer was objectively ascertainable before August 28, 2012. Respondents' expert witness, Dr. Wells, a dermatologist and dermatopathologist, testified that John's "cancer was objectively ascertainable long prior to the biopsy date of August 31, 2012 . . . ." According to Dr. Wells, "[t]o a reasonable degree of medical certainty John Wyman's cancer was objectively ascertainable and capable of being diagnosed when it first became symptomatic for the patient." Dr. Wells specifically concluded John's "cancer was present, causing damage and capable of being objectively ascertained as of December 22, 2011, well prior to the initial biopsy performed on August 31, 2012." He reached that conclusion after reviewing the "type and amount of disease that was determined at the biopsy and subsequent wide excision[.]" As Dr.

Wells explained, "[i]t takes time for a melanoma to form, grow to that depth and develop" to reach the degree of cancer John suffered.

While the Wymans maintain that Dr. Khong's testimony contradicts Dr. Wells's testimony and raises a triable issue of fact, we disagree. In fact, Dr. Khong agreed with Dr. Wells on the material fact that "for [John] to have had cancer diagnosable by biopsy in August of 2012, . . . the cancer had to have existed prior to that point in time[.]" When asked whether John's cancer was objectively ascertainable when he visited P.A. Scott, Dr. Khong merely conceded uncertainty. For instance, Dr. Khong was asked "how much before August 31, 2012, the patient had cancer?" He responded "I don't know." He further stated "I don't know" in response to "[w]ho would know the answer to that question?" Conceding uncertainty as to when John's cancer emerged does not contradict Dr. Wells so as to raise a triable issue of fact.

Consequently, we conclude John's cancer was objectively ascertainable before August 28, 2012. Indeed, Dr. Wells explained that had a biopsy been performed on December 22, 2011, it would have revealed cancer. *Cf. Stuard v. Jorgenson*, 150 Idaho 701, 706, 249 P.3d 1156, 1161 (2011) (explaining that objectively ascertainable "means that the existence of the injury is capable of being objectively ascertained."). The fact that the biopsy was not performed until August 31, 2012, is irrelevant.[1] Holding that John's cancer became objectively ascertainable only when the biopsy actually revealed cancer would equate to applying a discovery rule, which has been consistently rejected. *E.g.*, *Lapham v. Stewart*, 137 Idaho 582, 587, 51 P.3d 396, 401 (2002). We acknowledge that the absence of a discovery rule may produce harsh results in some cases. *Cf. Stuard*, 150 Idaho at 707, 249 P.3d at 1162 ("While this application is indeed harsh given that Stuard did not himself know the operation was negligently performed, his arguments are better to be taken up with the legislature in the adoption of a discovery rule for all medical malpractice claims."). But here, any "harshness" of our ruling is ameliorated by the fact that the Wymans waited until nearly two years after the biopsy to pursue a legal claim. They had ample time to sue after obtaining the biopsy results, during which Idaho Code section 5-219(4) would have presented no barrier. Given that statutes of limitation serve to encourage parties to promptly vindicate their rights, we affirm that summary judgment was properly granted.

---

[1] In fact, the Wymans' argument that "there can be no proof that [John] suffered harm prior to the [biopsy] date" speciously undermines the merits of their case. If "there can be no proof" that John suffered any harm at the time of the two visits with P.A. Scott, there would be no damages to recover.

**B. We decline to award attorney fees on appeal.**

Respondents request attorney fees under Idaho Code section 12-121 and Idaho Appellate Rule 41(a). Attorney fees are proper under these rules "if the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 633, 329 P.3d 1072, 1081 (2014) (citation and internal quotation marks omitted). "Fees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).

Respondents argue the Wymans unreasonably pursued this appeal in the face of well-settled law. Though their claims are untimely, the Wymans did not pursue their claims frivolously, unreasonably, or without foundation. We decline to award attorney fees on appeal to Respondents.

## V. CONCLUSION

We affirm the district court's grant of summary judgment to Respondents. We decline to award attorney fees and costs on appeal.

Justices EISMANN, W. JONES, HORTON and BRODY, **CONCUR.**