# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40742

| | | |
|---|---|---|
| RYAN CONNER and JAMI LEIGH STEINMEYER-CONNER, individually, and JAMI LEIGH STEINMEYER-CONNER as Guardian Ad Litem for her natural children, KABRYA A. STEINMEYER and MAKIYAH L. STEINMEYER, and RYAN CONNER and JAMI LEIGH STEINMEYER-CONNER as Guardian Ad Litem for their natural child, URIAH R. CONNER, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Boise, May 2014 Term<br><br>2014 Opinion No. 89<br><br>Filed: August 22, 2014<br><br>Stephen Kenyon, Clerk |
| Plaintiffs-Appellants, | )<br>) | |
| v. | )<br>) | |
| BRYAN F. HODGES, M.D., | )<br>) | |
| Defendant-Respondent, | )<br>) | |
| and | )<br>) | |
| JOHN DOES I-V, persons or entities, | )<br>) | |
| Defendants. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The judgment of the district court is <u>affirmed</u> in part, <u>vacated</u> in part and the case is <u>remanded</u> for further proceedings consistent with this opinion.

Lojek Law Offices, Chtd., Boise, for appellant Ryan Conner. Donald W. Lojek argued.

Gordon Law Offices, Chtd., Boise, for appellant Jami Leigh Steinmeyer-Conner. Bruce S. Bistline argued.

Powers Tolman Farley, PLLC, Boise, for respondent. Portia L. Rauer argued.

_____

HORTON, Justice.

1

Jami and Ryan Conner appeal the district court's grant of summary judgment dismissing their claims for medical malpractice, breach of contract, and loss of consortium. The Conners allege that Jami unexpectedly became pregnant due to Dr. Bryan Hodges' negligent performance of a bilateral tubal ligation. The district court concluded that the medical malpractice claim was barred by the two-year statute of limitations found in Idaho Code section 5-219(4), as Jami suffered some damage that was objectively ascertainable at the time of the surgery. We affirm the district court's grant of summary judgment dismissing the Conners' breach of contract and consortium claims and we vacate the judgment dismissing the medical malpractice claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, while pregnant with her second child, Jami decided that she did not want to have more children. She discussed permanent birth control options with her physician, Dr. Hodges. They agreed that Dr. Hodges would perform a bilateral tubal ligation via electrocautery, a sterilization procedure in which the fallopian tubes are physically obstructed by using an electrical current to pinch the tubes closed. Dr. Hodges performed the bilateral tubal ligation on January 31, 2007. Based on her discussions with Dr. Hodges, Jami understood that the procedure was a permanent birth control method making the odds of becoming pregnant without prior surgical intervention extremely low. In fact, Dr. Hodges indicated that the purpose of performing the tubal ligation was permanent sterilization.

At the time of the ligation procedure, Jami was married to Danny Steinmeyer, the father of her second child. The two divorced in March of 2007. Jami saw Dr. Hodges approximately five times between January and August of 2007, and at no time during these visits did he suggest that Jami undergo a procedure to ensure that the tubal ligation was performed properly or to determine that the fallopian tubes were closed. In October of 2008, Jami began a sexual relationship with Ryan. Jami and Ryan began living together in December of 2008 and began engaging in unprotected sex. Ryan ended the relationship in May 2009.

In June of 2009, Jami discovered she had become pregnant on or around April 22, 2009. Jami and Ryan reconciled and Ryan moved back in with her a few weeks after he learned of the pregnancy. Jami gave birth to her third child on January 13, 2010. The next day, on January 14, 2010, Dr. Darren Wehyrich performed a second bilateral tubal ligation. Jami and Ryan then married on February 19, 2010.

2

The Conners filed their complaint on April 22, 2011.[1] Dr. Hodges moved for summary judgment on November 1, 2012, arguing the Conners' action was barred by the statute of limitations provided by Idaho Code section 5-219(4). Dr. Hodges' motion was supported by the affidavit of Dr. Lee Self, who indicated that in January of 2007 there were two objective medical tests available, hysterosalpingograms and laparoscopic chromotubations, that if performed, would have shown whether Jami's fallopian tubes were successfully obstructed as a result of the ligation procedure. Based on the availability of these tests, Dr. Hodges argued that Jami's medical malpractice action accrued on January 31, 2007, the date the surgery was performed, and since the Conners did not file their complaint until April 22, 2011, their claims were time-barred.

The Conners responded and submitted the affidavit of Dr. Philip Welch, who reviewed Jami's medical records and opined to a reasonable degree of medical certainty that her "left fallopian tube was never ligated or damaged in any significant way during the course of the procedure performed by Dr. Hodges in January of 2007." Thus, the practical effect of the surgery was that Dr. Hodges performed a unilateral tubal ligation of Jami's right fallopian tube. Dr. Welch explained that the most logical explanation for this error was that Dr. Hodges failed to adequately locate the left fallopian tube and performed electrocautery on the "round ligament" which is situated close to, and closely resembles, the fallopian tube. Due to the nature of the round ligament, Dr. Welch explained that Jami would have suffered no harm or pain if the round ligament had been cauterized.

Dr. Welch also testified that the two tests identified by Dr. Self were invasive, risky, painful, and would have been medically unnecessary. A hysterosalpingogram would create the risk of infection and cause significant discomfort. A laparoscopic chromotubation involves laproscopic surgery, which presents the risk of internal injury, infection, and the risks attendant to the use of anesthesia. Dr. Welch explained that the only purpose for performing the two tests would be to double-check Dr. Hodges' work. Dr. Welch opined that any doctor who performed such unnecessary, risky, and painful procedures could be subject to disciplinary review and sanction. Thus, the Conners argued that Jami did not suffer any damage that was objectively

---

[1] The action was filed on behalf of Ryan, Jami and Jami's children. The complaint alleged medical malpractice, breach of contract, battery, negligent and intentional infliction of emotional distress, and negligent misrepresentation. The parties stipulated to dismiss certain claims with prejudice and on November 30, 2012, the district court dismissed all of the children's claims, Ryan's breach of contract claim, and the claims for battery, negligent misrepresentation, and intentional infliction of emotional distress.

ascertainable until her pregnancy, and as such, the cause of action did not accrue until April 22, 2009, when she became pregnant.

The district court heard Dr. Hodges' motion for summary judgment on December 10, 2012. At issue were Jami's medical malpractice and breach of contract claims, along with Ryan's medical malpractice and loss of consortium claims. On January 9, 2013, the district court issued a decision which concluded that the Conners' medical malpractice claims were time-barred because Dr. Hodges had presented undisputed evidence that damages were objectively ascertainable immediately following the surgery, as the failure to seal Jami's left fallopian tube was capable of being objectively ascertained by way of a hysterosalpingogram or laproscopic chromotubation in January of 2007. The district court concluded that Ryan's loss of consortium claim failed based on the failure of Jami's underlying medical malpractice claim and because the Conners were not married at the time of her alleged injury. Finally, the district court determined that Jami's breach of contract claim could not be pursued because the injury occurred on account of the failure to provide health care and that Idaho Code section 6-1012 precluded a separate action for breach of contract. Based upon these conclusions, the district court dismissed the Conners' complaint. The Conners timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002).

## III. ANALYSIS

**A. The district court erred in granting Dr. Hodges' motion for summary judgment as to the medical malpractice claim.**

4

The district court carefully reviewed this Court's ruling in *Stuard v. Jorgenson*, 150 Idaho 701, 249 P.3d 1156 (2011), and concluded that Jami "suffered damage that was objectively ascertainable on the date of surgery because it is undisputed that either a hysterosalpingogram or chromotubation would have shown that the left fallopian tube had not been successfully ligated." Thus, the district court reasoned, Jami "would have had a medical malpractice claim on an omission theory at the conclusion of the unsuccessful surgery" in January of 2007, and, because the Conners did not file their complaint until April of 2011, the medical malpractice claim was time-barred under the two year statute of limitations found in Idaho Code section 5-219(4).

On appeal, Jami argues that she did not suffer "some damage" at the time of the procedure, but only when she became pregnant.[2] Jami also argues that the potential utilization of unnecessary and invasive medical tests solely for the purpose of determining whether Dr. Hodges properly performed the tubal ligation does not render her injury "objectively ascertainable." Jami asserts that the district court erred by utilizing the "objectively ascertainable" analysis to determine whether there was "some damage." Next, she argues that if the district court applied the "objectively ascertainable" standard correctly under *Stuard*, then *Stuard* was wrongly decided and, in this circumstance, Idaho Code section 5-219(4) is unconstitutional.

Dr. Hodges counters that the district court properly applied the analysis that we employed in *Stuard* and Jami's cause of action accrued at the time of the surgery because there was unrefuted evidence that either of the two objective medical tests would have shown that Jami's left fallopian tube had not been sealed. Dr. Hodges further argues that *Stuard* was decided properly and in accord with this Court's prior decisions regarding Idaho Code section 5-219(4).

---

[2] We note the complaint alleges damages based on Dr. Hodges' failure to provide care which conformed to the community standard of health care practice in the performance of bilateral tubal ligations. Jami alleges she was damaged by needing to undergo a second tubal ligation, the pain and suffering due to the burden imposed by having an unhealthy and unwanted child, and her increased risk of needing additional medical care. As a result, we view this claim as one for medical malpractice, not one for wrongful conception under Idaho Code section 5-334. This statute permits action to be brought when "but for a wrongful act or omission, fertilization would not have occurred . . . ." I.C. § 5-334(2). Although the same statute of limitations applies to actions for medical malpractice and wrongful conception, the accrual date of the cause of action may be different. *See Blake v. Cruz*, 108 Idaho 253, 260, 698 P.2d 315, 322 (1984), *superseded in part by statute*, I.C. § 5-334(1) ("Since under the cause of action for wrongful birth, there is no defective child until and unless the birth occurs, logic dictates that the statute of limitations cannot begin to run until the date of birth").

5

We begin by addressing Jami's argument that the district court erred in applying the "objectively ascertainable" analysis in this case. Pursuant to Idaho Code section 5-219(4), "[a]n action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Conway v. Sonntag*, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005). Under the statute, the cause of action accrues "as of the time of the occurrence, act or omission complained of" and "shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer." I.C. § 5-219(4); *see Conway*, 141 Idaho at 146, 106 P.3d at 472. Nevertheless, in a negligence action, because the plaintiff must prove actual damage, the statute of limitations cannot begin to run until some damage has occurred as a result of the alleged malpractice. *See Hawley v. Green*, 117 Idaho 498, 502, 788 P.2d 1321, 1325 (1990); *Streib v. Veigel*, 109 Idaho 174, 178, 706 P.2d 63, 67 (1985).

In *Davis v. Moran*, this Court explained that when determining whether "some damage" has occurred, the trial court is to identify the point at which the "fact of injury becomes objectively ascertainable." 112 Idaho 703, 709, 735 P.2d 1014, 1020 (1987). By "objectively ascertainable," "we mean that objective medical proof would support the existence of an actual injury." *Id.* at 709 n.4, 735 P.2d at 1020 n.4. The concept of an "'objectively ascertainable injury' is simply an analytical tool to be used in determining when 'some damage' has occurred." *Conway*, 141 Idaho at 146–47, 106 P.3d at 472–73. Given our long-standing precedent on this point, we can find no error in the district court's consideration of whether Jami's injury was objectively ascertainable.

We next consider whether the district court properly applied the "objectively ascertainable" analysis to the facts of this case, and particularly whether the court correctly applied *Stuard,* our most recent decision applying that analysis in the medical malpractice context. Despite the district court's careful consideration of the opinion in *Stuard*, we disagree with the district court's conclusion that Jami suffered an objectively ascertainable injury on the date of the surgery. While we are acutely aware that the district court believed itself constrained[3]

---

[3]   The district court stated that it "recognize[d] that … applying the statute of limitations produces a harsh result here. . . . However, in light of the clear holding of *Stuard* . . . this Court is constrained to find that the medical malpractice claim here is time-barred."

 If our decision in *Stuard* was, in fact, binding precedent, the district court would have indeed been required to apply the rule of law pronounced therein. *State v. Guzman*, 122 Idaho 981, 986, 842 P.2d 660, 665 (1992).

to apply *Stuard* to the facts of this case, we disagree that *Stuard* dictates the result reached by the district court. Rather, we conclude that this case is distinguishable from *Stuard*.

In *Stuard*, Dr. Jorgenson performed spinal surgery at the wrong level of Stuard's spine in July of 2004. 150 Idaho at 702, 249 P.3d at 1157. Despite operating at the wrong level, the operation inexplicably alleviated Stuard's symptoms. *Id.* Two years later, in August of 2006, Stuard suffered another injury resulting in another MRI being performed. The second MRI brought the previous error to Dr. Jorgenson's attention. *Id.* at 703, 249 P.3d at 1158. Stuard brought a medical malpractice action against Dr. Jorgenson in April of 2007. *Id.* This Court affirmed the district court's decision that Stuard's action was time-barred by operation of Idaho Code section 5-219(4). *Id.* at 708, 249 P.3d at 1163.

In reaching this decision, we explained that "[t]he language of *Davis* defining 'objectively ascertainable' to mean 'that objective medical proof would support the existence of an actual injury,' means that the existence of the injury is *capable* of being objectively ascertained." *Id.* at 706, 249 P.3d at 1161 (quoting *Davis*, 112 Idaho at 709 n.4, 735 P.2d at 1020 n.4) (emphasis added). Applying this definition, we concluded that Stuard's injury, consisting of the "removal of healthy tissue and the installation of hardware at the wrong level," was objectively ascertainable at the time of the July 2004 surgery "because *had* objective medical proof in the form of an MRI been ordered, *it would have shown* that the surgery was performed at the wrong level, and that Stuard had suffered damages as a result of its performance at the wrong level." *Id.* (emphasis added).

Importantly, in *Stuard*, it was undisputed that an MRI could have been performed which would have shown that Stuard had suffered damages as a result of the negligently performed surgery. *Id.* Here, Dr. Hodges presented the affidavit of Dr. Self, who opined that there were two objective medical tests available in January of 2007 which would have shown whether Jami's left fallopian tube was successfully obstructed. However, unlike in *Stuard*, Jami presented expert testimony challenging Dr. Self's contention that Jami's injury was capable of being objectively ascertained. Jami offered the affidavit of Dr. Welch, in which he explained that the procedures identified by Dr. Self are invasive, painful, risky, and costly. Dr. Welch also indicated that there are "no circumstances" which would warrant recommending or performing either a hysterosalpingogram or a laparoscopic chromotubation to verify that a tubal ligation had been successfully performed. As a result, neither test would be medically necessary nor would there

7

have been "any medical justification" for performing either procedure. Dr. Welch opined that any physician who recommended or performed such a risky, painful, expensive, and medically unnecessary procedure would be subject to disciplinary action and could possibly have his or her medical license revoked. We must accept the truth of Dr. Welch's assertion for purposes of reviewing this grant of summary judgment. If no physician would perform such procedures, then the alleged injury was not capable of being objectively ascertained.[4]

For this reason, we conclude that the district court erred in its determination that the cause of action for malpractice accrued on the date of the 2007 surgery. Therefore, we vacate that portion of the judgment dismissing the malpractice action. Based on our conclusion that the district court erred in granting Dr. Hodges' motion for summary judgment based upon the statute of limitations, we do not reach Jami's argument regarding the constitutionality of Idaho Code section 5-219(4) as it was applied in this case.

**B. The district court properly granted Dr. Hodges' motion for summary judgment with respect to the breach of contract claim.**

The district court concluded that Idaho Code section 6-1012 precluded a separate contract action because Jami's claim arose out of the failure to provide professional medical care. Jami argues that the unique facts of this case do not preclude her breach of contract claim. She argues that Dr. Hodges' failure to cauterize her left fallopian tube was a breach of a term of the contract between them. Jami argues that since Idaho Code section 6-1012 applies to cases arising from "injury to or death of any person," and her claim is premised upon the *failure* to inflict injury upon her, her claim is not governed by the statute. Dr. Hodges responds that the law is well-settled that a claim pertaining to the provision or failure to provide health care sounds in tort, precluding a separate contract action. Dr. Hodges asserts that the gravamen of Jami's claim is that Dr. Hodges breached a duty imposed by law by failing to perform the operation Jami sought in accordance with the applicable community standard of health care practice. We agree.

We look to the complaint to determine "whether or not the gravamen of this action consists of a breach of the contract, itself, or the duty imposed by law in relation to the manner of its performance." *Trimming v. Howard*, 52 Idaho 412, 415, 16 P.2d 661, 662 (1932) *declined to follow on other grounds by Johnson v. Gorton*, 94 Idaho 595, 597, 495 P.2d 1, 3 (1972). This

---

[4] In *Stuard*, we did not intend to create a bright line rule that the existence of any conceivable medical test—regardless of how risky, painful and invasive it might be— which would objectively demonstrate the existence of an injury triggers the accrual of an action for medical malpractice.

Court has long held that when the basis of the action is the provision of or failure to provide health care, then the gist of the action is negligence and not a breach of the contract. *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 350, 33 P.3d 816, 824 (2001) (citing *Trimming*, 52 Idaho at 416, 16 P.2d at 662). When the gravamen of the claim is based on the negligence of a health care professional, the plaintiff is precluded from bringing a contract claim. *Hayward*, 136 Idaho at 350, 33 P.3d at 824.

Here, the complaint alleges that Dr. Hodges "breached his contract with Jami by failing to perform a tubal ligation upon or to cause any damage or alteration to Jami's left fallopian tube which he could have reasonably thought was sufficient to ligate or to create any functional obstruction to the passage of ovum through the tube." The assertion that Jami was not injured as a result of Dr. Hodge's failure to ligate her left fallopian tube is disingenuous. Her complaint alleges that the pregnancy resulting from the failed bilateral tubal ligation "caused Jami to suffer substantial physical distress and *injury*." (emphasis added). Her complaint continues, "Jami has suffered from a variety of health conditions which are causally related to becoming pregnant . . . and, as a consequence of these conditions, she has received substantial additional medical care including several surgeries." Jami further alleges that "she has experienced substantial emotional distress, pain, suffering, loss of enjoyment of life" and that "she is at increased risk of needing additional expensive and painful medical care in the future." Regardless of the definition of "injury" that we might choose to apply, it is manifest that this is an "action for damages due to injury . . . on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto." I.C. § 6-1012.

The district court properly concluded that the gravamen of Jami's claim is the failure to provide proper health care and Jami is precluded from bringing a breach of contract claim. We affirm that portion of the judgment dismissing the contract claim.

## C.  We will not address Ryan's claim that Dr. Hodges owed him a duty of care.

The district court granted Dr. Hodges' motion for summary judgment as to Ryan's claim for medical malpractice without making any specific conclusions as to the merits of this claim. On appeal, Ryan argues that Dr. Hodges owed him a duty of care because injury to a male partner in the case of a failed sterilization procedure is a foreseeable harm, regardless of marital status. The district court did not address whether Dr. Hodges owed Ryan a duty of care.

9

The district court's failure to address the issue that Ryan would have us address is most likely due to the pleadings in this case. The complaint does not allege that Dr. Hodges owed Ryan a duty. Rather, it alleges:

> 20.  At all times relevant to the care provided, there was a standard of care within the community of and around, Boise, Idaho, which was the measure of the duty of care which Hodges . . . owed to Jami when they were providing health care services to her.

> 21.  Hodges . . . negligently, recklessly or intentionally failed to provide care which conformed to the community standard of care then applicable in Boise, Idaho, to laproscopically performed bilateral tubal ligations utilizing electrocautery.

"This Court has repeatedly held that 'issues considered on summary judgment are those raised by the pleadings.'" *Vanvooren v. Astin*, 141 Idaho 440, 443, 111 P.3d 125, 128 (2005) (quoting *Beco Const. Co., Inc. v. City of Idaho Falls*, 124 Idaho 859, 865, 865 P.2d 950, 956 (1993)). The district court was not obligated to address a theory of recovery that was not pleaded. "'A cause of action not raised in the pleadings may not be raised on appeal, even if the trial court considered the issue.'" *Mickelsen Const., Inc. v. Horrocks*, 154 Idaho 396, 405, 299 P.3d 203, 212 (2013) (quoting *Nelson v. Big Lost River Irrigation Dist.*, 148 Idaho 157, 160, 219 P.3d 804, 807 (2009)). Thus, we do not address Ryan's claim.[5]

## D. The district court properly granted summary judgment as to Ryan's loss of consortium claim.

The district court identified two bases for granting Dr. Hodges' motion for summary judgment as to Ryan's claim for loss of consortium. First, the district court concluded that since Jami's claim for medical malpractice was time-barred, there was no underlying action to which Ryan's claim could attach. Second, Ryan and Jami were not married at the time of Jami's alleged injury, which the district court concluded was a prerequisite to a claim for loss of consortium. Our holding in Part III.A of this opinion renders the first basis of the district court's decision erroneous.

Ryan argues that the claim of loss of consortium should be extended to partners in "significant and meaningful relationships." Dr. Hodges counters that a claim for loss of consortium requires a marital relationship, noting that Ryan was not in a relationship with Jami

---

[5] We express doubt that this Court would ever adopt a rule of law creating potential liability for a physician conducting a sterilization procedure to all future sexual partners of a married patient. Such a rule would scarcely promote the preservation of the integrity of marital relationships.

when she had the surgery and he was not married to Jami when she became pregnant or the child was born.

We have frequently held that an action for loss of consortium is predicated upon the existence of a marriage. "The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 131 Idaho 254, 256, 953 P.2d 1363, 1365 (1998) (quoting *Runcorn v. Shearer Lumber Prods., Inc.*, 107 Idaho 389, 394, 690 P.2d 324, 329 (1984)). An award for loss of consortium is warranted when the tortious act of the defendant causes injury to the plaintiff's spouse, causing the plaintiff to suffer the loss of services, aid, society, companionship, comfort, and conjugal affection of their spouse. *See Phillips v. Erhart*, 151 Idaho 100, 109, 254 P.3d 1, 10 (2011); *see also Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 545, 726 P.2d 648, 657 (1985) (an award for "loss of consortium should be supported by substantial competent evidence of the loss of services, society, companionship, sexual relations, etc." regarding the relationship between a husband and wife). This Court has only recognized claims for loss of consortium when brought by a spouse. *See, e.g., Phillips*, 151 Idaho at 109, 254 P.3d at 10 (discussing loss of consortium as providing for loss of comfort, companionship, aid, care, and conjugal affection between spouses).

However, this Court has also held that third parties other than spouses may recover for injury to a relationship, recognizing the right of parents and children to recover for loss of "comfort, society and companionship." *See e.g., Hayward v. Yost*, 72 Idaho 415, 425, 242 P.2d 971, 977 (1952). Ryan asks this Court to extend this principle and recognize a derivative cause of action for injury to the relational interest of plaintiffs involved in "significant and meaningful relationships." We decline to do so.

> An action for the loss of consortium vindicates a
>
> right growing out of the marriage relation, for loss of which recovery may be had, and includes the exclusive right to the services of the spouse (which contemplates not so much services or reward earned as assistance and helpfulness in the relations of conjugal life according to their situation) and also the exclusive right to the society, companionship, and conjugal affection towards each other.

*Summerfield v. Pringle*, 65 Idaho 300, 313, 144 P.2d 214, 220 (1943).

"Since the family is the core of our society, the law seeks to foster and preserve marriage." *Howay v. Howay*, 74 Idaho 492, 499–500, 264 P.2d 691, 696 (1953). To adopt the rule of law proposed by Ryan would

11

be to adopt a vague, indefinite standard that would be incapable of just or predictable application. In the words of the United States District Court for the Northern District of Alabama: "Would the giving of an engagement ring qualify as creating a significant relationship? If not, how long would the engagement have to exist? Would "going steady" be sufficient? Is co-habitation sufficient? If it is, how much cohabitation? Would a simple 'rent sharing' do the trick?" *Weaver v. G.D. Searle & Co.,* 558 F.Supp. 720, 723 (N.D.Ala.1983). The answer to all of those questions, of course, is that no one knows.

*Gillespie-Linton v. Miles*, 473 A.2d 947, 953 (Md. Appellant. 1984). The Maryland court correctly observed:

any decision to extend to unmarried persons legal rights previously held only by married persons would necessitate identifying and weighing competing notions of public policy, social mores, and moral values. Such a decision is best left to the [Legislature]. "Only the Legislature responsible to the electorate should have the power to make such a radical change in the fabric of society."

*Id.* (quoting *Hendrix v. General Motors Corp.*, 193 Cal. Rptr. 922, 925 (Cal. App. 1 Dist. 1983)).

For these reasons, we decline to extend the right to recover for loss of consortium to unmarried partners[6] and hold that the district court properly dismissed Ryan's claim.

**E. Dr. Hodges is not entitled to attorney fees on appeal under Idaho Code section 12-121.**

Dr. Hodges requests attorney fees on appeal pursuant to Idaho Code section 12-121, arguing this appeal was brought frivolously, unreasonably, and without foundation. As to Jami's appeal, both Jami and Dr. Hodges prevailed in part. Thus, Dr. Hodges is not entitled to attorney fees. *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 68, 305 P.3d 499, 512 (2013). We find that Ryan presented a good faith argument for the extension or modification of the law regarding his consortium claim. For that reason, Dr. Hodges is not entitled to an award of attorney fees from Ryan pursuant to Idaho Code section 12-121. *Hanf v. Syringa Realty, Inc.*, 120 Idaho 364, 370, 816 P.2d 320, 326 (1991).

### IV. CONCLUSION

We affirm the judgment to the extent that the district court dismissed Jami's breach of contract claim and Ryan's claim for loss of consortium. We vacate that portion of the district

---

[6] We recognize that some jurisdictions have allowed loss of consortium claim to be brought by unmarried partners. *See, e.g., Lozoya v. Sanchez*, 66 P.3d 948, 957 (N.M. 2003) *abrogated on other grounds by Heath v. La Mariana Apartments*, 180 P.3d 664 (N.M. 2008) (unmarried cohabitant could recover for loss of consortium if the claimant could "prove an 'intimate familial relationship' with the victim" by taking into account the duration of the relationship, the extent of mutual dependence, and the makeup of the household). We note that the present case bears little similarity to the relationship addressed in *Lozoya*, wherein the couple had been living together for fifteen years.

court's judgment dismissing the medical malpractice claim and remand to the district court for proceedings consistent with this opinion. We do not award attorney fees or costs.

Chief Justice BURDICK, Justice W. JONES and Justice Pro Tem KIDWELL, **CONCUR**.

J. JONES, Justice, specially concurring.

I concur in the Court's opinion while adhering to my belief that the Court erred regarding the "some damage" issue in *Stuard v. Jorgenson*, as expressed in my dissent on that issue. 150 Idaho at 709−14, 249 P.3d at 1164−69.