# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50094

| | | |
|---|---|---|
| ROBERTA ANN EVANS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **Boise, May 2024 Term** |
| v. | ) | |
| | ) | **Opinion Filed: August 19, 2024** |
| MARK B. WRIGHT, M.D., ST. LUKE'S | ) | |
| MAGIC VALLEY REGIONAL MEDICAL | ) | **Melanie Gagnepain, Clerk** |
| CENTER, LTD., | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Michael P. Tribe, District Judge.

The judgment of the district court is <u>affirmed</u>.

Points Law, PLLC, Boise, for Appellant Roberta Ann Evans. Michelle R. Points argued.

Tolman Brizee & Cannon, P.C., Twin Falls, for Respondent Mark B. Wright. Casey Hemmer argued.

Quane McColl, PLLC, Boise, for Respondent St. Luke's Magic Valley Regional Medical Center. Anita Hurlburt argued.

———————————————

MEYER, Justice.

This case concerns a medical malpractice action arising from a total hip replacement surgery performed on Roberta Evans by Dr. Mark B. Wright, at St. Luke's Magic Valley Regional Medical Center (St. Luke's). In the months after the surgery, Evans consistently complained about pain and discomfort at several follow-up appointments. After the pain persisted, she sought a second opinion from a doctor who confirmed that Evans's hip bone socket was abnormally anteverted.[1] Evans underwent revision surgery, which also revealed significant findings of periprosthetic joint infection.

Evans initiated a lawsuit against Dr. Wright and St. Luke's, alleging negligence in their

---

[1] Tipped or bent forward. *Anteverted*, Dorland's Illustrated Medical Dictionary (24th ed. 1965).

follow-up care and treatment of her. On Dr. Wright's and St. Luke's motions, the district court dismissed the case, finding that Evans's cause of action was barred by the two-year statute of limitations under Idaho Code section 5-219(4). Because Evans's surgical complications consistent with abnormal anteversion and impingement were objectively ascertainable by March 4, 2019, revealing that some damage was present, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2018, Evans had a total hip replacement performed by Dr. Wright at St. Luke's Magic Valley Regional Medical Center in Twin Falls, Idaho. After the surgery, Dr. Wright and St. Luke's reported to Evans that post-operative imaging showed that the components were in "excellent" position with no signs of complications. In the following months, Evans reported experiencing several types of pain, such as incision pain, thigh pain, groin hip pain, and discomfort during intimacy. She also felt that her hip was abnormal and complained that it was "catching" or "clicking." Dr. Wright and St. Luke's informed her that if her complaints did not subside in the next nine months, they might need to consider other options but during the interim they would wait and see if the issues resolved.

The following year, Evans had several follow-up appointments in which she expressed her continued pain and discomfort in her left hip. At those appointments, X-ray images were taken. Although different treatment options were recommended related to daily activities and exercise, the pain persisted. Evans independently chose to seek a second opinion, and on June 17, 2019, she visited Dr. Greg Irvine at St. Luke's Clinic-Orthopedics in McCall. Dr. Irvine reviewed the imaging taken on April 22, 2019. He noted that the imaging depicted the "acetabular component appears to be abnormally anteverted and perhaps a bit vertical." Dr. Irvine's plan included a CT scan the following day, which Dr. Irvine interpreted as "[h]ip is anteverted about 65 degrees with the neck of the femur impinging on the posterior acetabular component rim, causing a high likelihood of anterior subluxation."

Evans was referred to Dr. Jared Armstrong for a surgical consultation and was seen on July 8, 2019. Dr. Armstrong reviewed Evans's previous imaging and CT scan and assessed that Evans had a "failed left total hip arthroplasty – impingement of femoral stem on posterior acetabular cup; left hip and thigh pain." An arthroplasty revision was then scheduled. On October 19, 2019, Evans underwent revision surgery with Dr. Armstrong. The surgery confirmed that Evans had

2

"significant findings" of periprosthetic joint infection and metallosis.[2] Dr. Armstrong found "[t]here was a groove worn on the posterior femoral stem along the posterior femoral neck consistent with impingement on the acetabular wall."

On April 6, 2021, Evans filed her pre-litigation screening application with the Idaho State Board of Medicine. On August 19, 2021, Evans filed her complaint and demand for jury trial. Dr. Wright and St. Luke's subsequently filed respective motions to dismiss or for judgment on the pleadings and memoranda in support. Dr. Wright and St. Luke's argued that Evans's cause of action was time-barred.

On April 5, 2022, Evans filed a response to the motions to dismiss and a personal declaration in support of her response. Evans also filed a motion to convert the motions to dismiss to motions for summary judgment pursuant to Idaho Rule of Civil Procedure 12(b)(6) and 12(c), "so that the Court may review the Declaration of Roberta Ann Evans and the medical records attached thereto." Dr. Wright and St. Luke's moved to strike Evans's declaration.

On April 19, 2022, Evans's motion to convert came before the district court with several other motions, including Dr. Wright's and St. Luke's separate motions to dismiss, motions to strike the declaration of Roberta Evans, and motions to shorten time for the hearing on their motions to strike. Evans's declaration, with numerous medical records attached, accompanied her motion to convert the motions to dismiss to motions for summary judgment so that the district court could consider matters outside the pleadings. At the hearing, the district court first heard the parties' arguments and granted, from the bench, Dr. Wright's and St. Luke's motions to strike Evans's declaration. The district court then took the motions to dismiss under advisement.

On May 2, 2022, the district court granted Dr. Wright's and St. Luke's motions to dismiss. On May 4, 2022, final judgment was entered. On May 17, 2022, Evans filed a motion for reconsideration, a memorandum in support, and an alternative motion for leave to file a second amended complaint. After oral argument was held on Evans's motion for reconsideration, the district court issued a written decision denying Evans's motion on July 28, 2022.

On September 8, 2022, Evans filed her notice of appeal. On April 6, 2023, Dr. Wright filed a motion to dismiss appeal, and St. Luke's joined in Dr. Wright's motion. This Court denied Dr.

---

[2] Metallosis is a condition caused by the buildup and shedding of metal debris, which occurs when metal joint replacement devices rub against each other and release metal ions into the body. *Metallosis and Metal Poisoning*, DRUGWATCH.COM, https://www.drugwatch.com/hip-replacement/metallosis/#:~:text=Metallosis%20is%20a%20condition%20caused,groin%20pain%2C%20numbness%20and%20swelling (last visited Aug. 15, 2024).

Wright's motion to dismiss but requested the parties include briefing on the motion to dismiss appeal in their substantive briefs.

## II. ISSUES ON APPEAL

1. Was Evans's notice of appeal timely filed?

2. Is Evans's motion to convert properly before this Court?

3. Did the district court err in dismissing Evan's amended complaint as time-barred under the statute of limitations?

4. Did the district court err in failing to consider Evans's equitable estoppel argument?

5. Are Dr. Wright and St. Luke's entitled to attorney fees on appeal?

## III. STANDARDS OF REVIEW

A district court's dismissal of a complaint under Rule 12(b)(6) of the Idaho Rules of Civil Procedure is reviewed de novo. *Paslay v. A&B Irrigation Dist.*, 162 Idaho 866, 868, 406 P.3d 878, 880 (2017). "A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated." *Hammer v. Ribi*, 162 Idaho 570, 573, 401 P.3d 148, 151 (2017) (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). A case should not be dismissed for failure to present a claim unless it appears beyond a doubt that the plaintiff cannot prove any facts supporting the claim that would entitle her to relief. *Paslay*, 162 Idaho at 869, 406 P.3d at 881 (citation omitted). On review of a dismissal, this Court determines whether the non-movant has alleged sufficient facts to support her claim, which, if true, would entitle her to relief. *Hammer*, 162 Idaho at 573, 401 P.3d at 151 (citation omitted). In doing so, we draw "all reasonable inferences in favor of the non-moving party." *Id.* (quoting *Idaho Wool Growers Ass'n, Inc. v. State*, 154 Idaho 716, 720, 302 P.3d 341, 345 (2012)).

When reviewing the trial court's decision to convert a motion to dismiss into a motion for summary judgment, courts apply an abuse of discretion standard. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (discussing Fed. R. Civ. P. 12(b), which is identical to I.R.C.P. 12(b)). This Court applies an abuse of discretion standard to review the trial court's evidentiary rulings. *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 741, 463 P.3d 365, 375 (2020). "Evidentiary rulings that constitute an abuse of discretion will not be reversed unless 'a substantial right of the party is affected.'" *Id.* (quoting *Van v. Portneuf Med. Ctr., Inc.*, 156 Idaho 696, 701, 330 P.3d 1054, 1059 (2014)).

We apply our well-known abuse of discretion standard to review discretionary decisions of a trial court, which requires us to consider "[w]hether the trial court: (1) correctly perceived the

issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

The interpretation of a statute or court rule is a question of law over which this Court exercises free review. *See E. Idaho Econ. Dev. Council v. Lockwood Packaging Corp. Idaho*, 139 Idaho 492, 495, 80 P.3d 1093, 1096 (2003); *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 581, 416 P.3d 951, 953 (2018). "The date for when a cause of action accrues may be a question of fact or law." *Walsh v. Swapp Law, PLLC*, 166 Idaho 629, 635, 462 P.3d 607, 613 (2020) (citation omitted). "[I]f no disputed issues of material fact exist, when a cause of action accrues is a question of law for determination by this Court." *Id.* (alterations in original) (citation omitted).

## IV. ANALYSIS

### A. Evans timely filed her notice of appeal.

As an initial matter, Dr. Wright and St. Luke's urge this Court to dismiss Evans's appeal. They argue that Evans's appeal is time-barred because Evans failed to file her notice of appeal within forty-two days of the judgment, as required by Rule 14 of the Idaho Appellate Rules. The district court entered its final judgment on May 4, 2022, and Evans filed her notice of appeal on September 8, 2022 (127 days later). Evans argues that her appeal is timely under Idaho Rule of Civil Procedure 11.2(b) because she filed a motion for reconsideration within fourteen days of entry of the judgment, which terminated the forty-two-day period in which to file her notice of appeal. Dr. Wright and St. Luke's counter that the motion for reconsideration Evans filed does not serve to terminate the time for Evans to file an appeal of the final judgment because motions for reconsideration only apply to interlocutory orders.

Rule 11.2(b) of the Idaho Rules of Civil Procedure provides that "[a] motion to reconsider any order of the trial court entered before final judgment may be made at any time prior to or within 14 days after the entry of a final judgment. A motion to reconsider an order entered after the entry of final judgment must be made within 14 days after entry of the order." I.R.C.P. 11.2(b)(1). Thus, a party may file a timely motion to reconsider any order: (1) at any time before the court enters a final judgment or (2) within fourteen days after the court enters a final judgment. *See id.*

5

Appeals from the district court must be made within forty-two days of the entry of the appealable order or judgment. I.A.R. 14(a). Failure to observe this timing requirement renders the Court without jurisdiction to hear the appeal. I.A.R. 21. However, Rule 14 of the Idaho Appellate Rules provides that this requirement is terminated by the filing of a motion that "if granted, could affect any findings of fact, conclusions of law or any judgment in the action[.]" I.A.R. 14(a). A motion for reconsideration falls under this category. *See BHC Intermountain Hosp., Inc. v. Ada County*, 148 Idaho 294, 295, 221 P.3d 520, 521 (2009) ("A motion for reconsideration may also toll the time to file a notice of appeal; however, the motion must be made no later than fourteen days after entry of the final judgment. I.R.C.P. 11(a)(2)(B).").

We take this opportunity to emphasize that the following portion of Rule 14 of the Idaho Appellate Rules is not a tolling provision; rather, it terminates the appeal-filing time:

> The time for an appeal from any civil judgment or order in an action is *terminated* by the filing of a timely motion which, if granted, could affect any findings of fact, conclusions of law or any judgment in the action . . . in which case the appeal period for all judgments or orders *commences* to *run* upon the date of the clerk's filing stamp on the order deciding such motion.

I.A.R. 14(a) (emphasis added).

Here, on May 2, 2022, the district court granted Dr. Wright's and St. Luke's motions to dismiss. Subsequently, on May 4, 2022, the district court entered final judgment. Following this, on May 17, 2022, Evans filed a motion for reconsideration and memorandum in support along with an alternative motion for leave to file a second amended complaint. The motion for reconsideration was timely filed and served within fourteen days after the entry of the judgment. *See* I.R.C.P. 2.2(a)(1). The district court then entered an order on the motion for reconsideration that started the forty-two-day appeal period on July 28, 2022. Since Evans's notice of appeal was filed on September 8, 2022, within forty-two days of the denial of her Rule 11.2(b) motion, Evans's appeal was timely filed. Accordingly, this Court has jurisdiction to hear Evans's appeal because her motion for reconsideration terminated the appeal-filing timeframe, which was restarted when the court entered its order disposing of the post-judgment motion for reconsideration.

**B.** **Although not directly addressed by the district court, its ruling on Evans's motion to strike shows that it implicitly rejected Evans's motion to convert.**

Evans's motion to convert came before the district court with several other motions, including Dr. Wright's and St. Luke's separate motions to dismiss, motions to strike the declaration of Roberta Evans, and motions to shorten time for hearing on their motions to strike. With

numerous medical records attached, Evans's declaration accompanied her motion to convert so that the district court could consider matters outside the pleadings. At the hearing, the district court first heard arguments and orally granted Dr. Wright's and St. Luke's motions to shorten the time for hearing their motions to strike. Then, the district court heard arguments and granted from the bench Dr. Wright's and St. Luke's motions to strike Evans's declaration. The district court did not explicitly deny Evans's motion to convert.

1. *The district court made an implicit ruling while deciding Dr. Wright's and St. Luke's motion to strike, which is tantamount to a rejection of Evans's motion to convert.*

Evans argues that the district court erred in holding that the motions to dismiss brought under Rule 12(b)(6) of the Idaho Rules of Civil Procedure could not be converted to a motion for summary judgment under Rule 56. Dr. Wright and St. Luke's counter by arguing that Evans voluntarily withdrew her motion to convert and, therefore, it is not properly before this Court on appeal.

Even if a district court does not explicitly address an issue below, the court's decision on the matter could be implicit in its ruling on another issue. *See Lubcke v. Boise City/Ada Cnty. Hous. Auth.*, 124 Idaho 450, 463, 860 P.2d 653, 666 (1993) ("[E]ven though the district court did not explicitly address the qualified immunity issue in responding to [the defendants'] motions to dismiss and post-trial motions, it is implicit in the court's rulings that it rejected [the defendants'] properly raised immunity claims."). Dr. Wright's and St. Luke's representation that Evans voluntarily withdrew her motion to convert is inaccurate. Instead, the district court granted the motions to strike Evans's declaration, making a ruling on her motion to convert a foregone conclusion, which she acknowledged to the district court. However, her acknowledgment that there was nothing left to rule on after the district court granted Dr. Wright's and St. Luke's motions to strike her affidavit was not a withdrawal of her motion to convert—it was simply an acknowledgment that the district court had implicitly denied her motion. Given that Evans's motion to convert and Dr. Wright's and St. Luke's motions to strike go hand in hand, this Court will consider the arguments asserted on appeal.

2. *The district court erred in determining that only the movant can present material outside of the pleadings to convert a motion to dismiss to a motion for summary judgment.*

On appeal, within her motion to convert argument, Evans is essentially arguing that the district court erred in striking her declaration. Dr. Wright's and St. Luke's primary argument supporting the motions to strike was that Idaho Rule of Civil Procedure 12(d) only contemplates

7

conversion of a Rule 12(b)(6) or 12(c) motion into a summary judgment motion if the *moving party* presents matters outside of the pleadings. In its ruling on the motions to strike, the district court ruled that a non-moving party could not submit matters outside the pleadings to convert a motion to dismiss to a motion for summary judgment. The court explained:

> [T]he [c]ourt has reviewed the cases cited [and] the briefing presented by the parties. . . .
>
> . . .
>
> I don't think it's entirely clear about the moving party, the non-moving party being able to file declarations or documents to take this out of the motion to dismiss, but certainly looking at the rule, in the 12(b), 12(c), 12(d), the [c]ourt has reviewed [*Bennett v. Bank of Eastern Oregon*, 167 Idaho 481, 472 P.3d 1125 (2020)], which is a 2020 case.
>
> It certainly, I don't want to say it's entirely clear. . . .
>
> . . .
>
> . . . I think [the motion to convert] is intended, when the movant presents matters outside the pleadings, so I'm going to grant the motion to strike, based on those rules and the caselaw cited.

The district court also offered a second reason for granting Dr. Wright's and St. Luke's motions to strike. The court stated, "[I]f the [c]ourt has misapplied the rule, and a non-moving party can convert this to summary judgment, in an exercise of discretion, the [c]ourt is not going to consider the declaration[.]"

The district court relied on *Bennett*, 167 Idaho at 485, 472 P.3d at 1129, and Rule 12(b) through (d) of the Idaho Rules of Civil Procedure for the "notion that conversion of a Rule 12(b)(6) [motion] to a Rule 56 motion for summary judgment should only occur when matters outside the pleadings are submitted by the moving party and considered by the [c]ourt." The notion emerged from the standard of review section in *Bennett* that stated "[i]f a 12(b)(6) *movant* presents 'matters outside the pleadings' and the trial court does not exclude them, then 'the motion must be treated as one for summary judgment under Rule 56.'" *Bennett*, 167 Idaho at 485, 472 P.3d at 1129 (emphasis in original) (quoting I.R.C.P. 12(d)).

We disagree with the notion espoused by Dr. Wright and St. Luke's, which is based on the standard of review statement from *Bennett*. Rule 12(d) of the Idaho Rules of Civil Procedure provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

8

summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

I.R.C.P. 12(d). The plain language of the rule allows a non-movant to present matters outside the pleadings to the court. However, the court still has the discretion to exclude those matters outside the pleadings. *See id.*

The district court erred in concluding that conversion of a motion to dismiss to a motion for summary judgment only occurs when matters outside the pleadings are submitted by the moving party. However, while this was in error, the court properly exercised its discretion in refusing to consider the additional evidence proffered by Evans.

## C. The district court did not err in dismissing Evans's complaint as time-barred under the applicable statute of limitations.

Evans's medical malpractice claim does not allege that Dr. Wright and St. Luke's were negligent in the first hip replacement operation. Instead, she contends that Dr. Wright and St. Luke's were negligent in not addressing her symptoms or the cause of those symptoms, which were later confirmed through imaging to be an impingement. Evans argues that the district court abused its discretion by holding that the post-operative complications commenced the running of the statute of limitations. Dr. Wright and St. Luke's maintain that the district court correctly held that the statute of limitations began to run on or before November 12, 2018, or, alternatively, no later than March 4, 2019.

To begin, Idaho Code section 5-219(4) requires that "[a]n action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Conner v. Hodges*, 157 Idaho 19, 24, 333 P.3d 130, 135 (2014) (alteration in original) (quoting *Conway v. Sonntag*, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005)). The cause of action accrues "as of the time of the occurrence, act or omission complained of" and "shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer . . . ." I.C. § 5-219(4). In most cases, the act or omission complained of and the injury to the plaintiff occur simultaneously, particularly in the medical context. *Davis v. Moran*, 112 Idaho 703, 708, 735 P.2d 1014, 1019 (1987).

However, before the action begins to accrue, this Court has held that there must be "some damage." *Stuard v. Jorgenson*, 150 Idaho 701, 704–05, 249 P.3d 1156, 1159–60 (2011) (citing *Lapham v. Stewart*, 137 Idaho 582, 586, 51 P.3d 396, 400 (2002)). When deciding if "some

damage" has occurred, the trial court should establish the moment when the "fact of injury becomes objectively ascertainable." *Conner*, 157 Idaho at 24, 333 P.3d 130 at 135 (quoting *Davis*, 112 Idaho at 709, 735 P.2d at 1020). The term "objectively ascertainable" refers to having objective medical proof that supports the existence of an actual injury. *See id.* (citation omitted). The "objectively ascertainable injury" standard is merely an additional analytical tool for determining when "some damage" has occurred. *Conway*, 141 Idaho at 146–47, 106 P.3d at 472–73.

> Below, the district court found that some damage had occurred before April 2019:
>
> > [Evans's] claim arose, and the statute of limitations period commenced, upon her sharing with [Dr. Wright and St. Luke's] that she was exhibiting symptoms, which showed some damages had occurred. [Evans's] complaints of suffering from popping, clicking, and pain shortly after her August 2018 surgery, in and of itself, indicates that there was "some damage", and a cause of action "on account of the provision of or failure to provide health care" arose, and the statute of limitations period began to run, as of that time.

Evans contends that, based on the medical notes and imaging, some damage became objectively ascertainable on April 22, 2019, not on November 12, 2018, the date relied on by the district court. Evans argues that before an abnormality was revealed on her April 22, 2019, X-rays, she was only suffering from symptoms that Dr. Wright and St. Luke's attributed to the natural healing process.

For an Idaho Rule of Civil Procedure 12(b)(6) motion to dismiss, all facts alleged in Evans's amended complaint are treated as true. *Hammer*, 162 Idaho at 574–75, 401 P.3d at 152–53. Because Evans filed her pre-litigation screening application with the Idaho Board of Medicine on April 6, 2021, and assuming she filed her complaint in district court within 30 days of the pre-litigation screening panel's advisory decision, the inquiry for this Court is whether some damage became objectively ascertainable before April 6, 2019. *See* I.C. § 6-1005 ("[T]he applicable statute of limitations shall be tolled and not be deemed to run during the time that such a claim is pending before such a panel and for thirty (30) days thereafter."). If so, her medical malpractice cause of action against Dr. Wright and St. Luke's is barred by the statute of limitations.

Working backward in time, Evans's amended complaint indicates that, in June 2019, she obtained a second opinion from Dr. Irvine, who reviewed the X-rays taken on April 22, 2019, and noted that the imaging showed "acetabular component appears to be abnormally anteverted and perhaps a bit vertical." Put simply, Evans's damage was shown on the X-rays taken on April 22, 2019. Evans argues that this date is when some damage became objectively ascertainable, and the

10

statute of limitations began to run. Evans's argument is unavailing because whether there was some damage or whether that damage was objectively ascertainable does not depend upon her knowledge. *See Lapham*, 137 Idaho at 587, 51 P.3d at 401.

As we stated in 1985 in *Streib v. Veigel*, this Court previously adopted a "discovery rule" in 1964 stating that a medical malpractice cause of action did not accrue until the patient learned, or in the exercise of reasonable care and diligence should have discovered, the damages resulting from the doctor's negligence. 109 Idaho 174, 175, 706 P.2d 63, 64 (1985). However, in 1971, the legislature amended Idaho Code section 5-219(4) to not apply the discovery rule to malpractice cases, with two exceptions for foreign objects left in a patient's body and for fraudulent concealment of negligence. *Id.* "To require that the fact of damage must be objectively ascertainable to the injured party would simply reinstate a discovery rule[.]" *Lapham*, 137 Idaho at 587, 51 P.3d at 401. The subjective discovery rule has been consistently rejected in Idaho. *See, e.g.*, *Wyman v. Eck*, 161 Idaho 723, 726–27, 390 P.3d 449, 452–53 (2017). In addition, the date some damage is ascertained is not necessarily the first date it is objectively ascertainable.

Dr. Irvine ordered a CT scan for the following day. His interpretation of the CT scan showed "[c]ompared to the most recent [April 22, 2019,] plain x-ray, the acetabular component appears to be in the same position." Thus, Evans's impingement—some damage—was present on April 22, 2019. She discussed a possible revision surgery with a physician assistant at that appointment. Even more so, the amended complaint alleges that some damage was present even before that date because the notes from April 22, 2019, indicate that the X-rays remained "[o]verall unchanged in comparison to previous [X]-rays." The previous X-rays were taken on January 2, 2019. In other words, the CT scan confirmed what the previous X-rays reflected to be the cause of the popping, catching, and pain—the impingement. Therefore, some damage was present earlier and was objectively ascertainable before April 6, 2019.

According to Evans's amended complaint, between the date of the surgery in August 2018 and the following November, Evans complained "that her hip felt 'abnormal,' which included complaints that it was 'catching' or 'clicking.'" Notably, on March 4, 2019, Evans's left hip had "thigh abnormality with swelling compared to the right side." Evans's amended complaint shows that there was some damage between November 2018 and March 2019. Her complaints were consistent with an impingement, which the CT scan later confirmed.

11

Evans's assertion that before April 22, 2019, she was only suffering from symptoms that Dr. Wright and St. Luke's attributed to the natural healing process is inconsistent with the allegations in her complaint in which she describes complications consistent with Dr. Irvine's and Dr. Armstrong's opinions from June and July 2019. Evans's position that her damages became objectively ascertainable only when the April 22, 2019, X-rays showed an abnormally anteverted hip bone socket would amount to applying a discovery rule. *See Lapham*, 137 Idaho at 587, 51 P.3d at 401.

To summarize, the district court correctly determined that the two-year statute of limitations barred Evans's medical malpractice claim and, therefore, did not err in granting Dr. Wright's and St. Luke's motions to dismiss.

**D.     The district court erred by failing to consider Evans's equitable estoppel argument; however, the error was harmless.**

Evans argues that the district court abused its discretion by completely failing to address her argument that the theory of equitable estoppel prevented Dr. Wright and St. Luke's from asserting that the statute of limitations bars Evans from pursuing her medical malpractice claim. Dr. Wright and St. Luke's counter that equitable estoppel does not apply, and even if it does, the elements of equitable estoppel were not met under the facts of this case.

The district court must address all the issues the parties present. *See Davis v. Davis* (*Est. of Davis*), 167 Idaho 229, 235, 469 P.3d 16, 22 (2020) ("It [is] incumbent on the district court to address all of the issues raised before it."). Evans's argument was raised both in her response to Dr. Wright's and St. Luke's motions to dismiss and in support of her motion for reconsideration. However, the district court did not mention the argument in its memorandum decision on the motions to dismiss or its memorandum decision on the motion for reconsideration. The district court erred in failing to address Evans's theory of equitable estoppel when granting Dr. Wright's and St. Luke's motions to dismiss.

The doctrine of equitable estoppel serves as a bar to a statute of limitations defense under certain circumstances. *Gregory v. Stallings*, 167 Idaho 123, 131–32, 468 P.3d 253, 261–62 (2020). "Equitable estoppel does not eliminate, toll, or extend the statute of limitations." *Ferro v. Soc'y of Saint Pius X*, 143 Idaho 538, 540, 149 P.3d 813, 815 (2006). It only bars a party from asserting the statute of limitations as a defense for "a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth." *Id.* at 540–41, 149 P.3d at 815–16. The party invoking equitable estoppel must prove four elements:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth;

(2) that the party asserting estoppel did not know or could not discover the truth;

(3) that the false representation or concealment was made with the intent that it be relied upon; and

(4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Gregory*, 167 Idaho at 131–32, 468 P.3d at 261–62 (citation omitted).

Evans argues that Dr. Wright and St. Luke's should be estopped from relying on the two-year statute of limitations contained in Idaho Code section 5-219 as a defense. Evans emphasizes that although her medical records suggested a possible impingement on November 12, 2018, X-rays on January 2, 2019, showed no signs of impingement. However, she was only informed of abnormal findings on April 22, 2019. Despite confirming the abnormality, Evans claims that Dr. Wright and St. Luke's then downplayed the issue and advised her to wait. The gist of Evans's equitable estoppel argument is that St. Luke's and Dr. Wright should be equitably estopped from defending based on the statute of limitations because their actions led her astray—away from the truth of her condition—and away from timely filing a medical malpractice claim against them for not properly treating her symptoms. Evans has not satisfied the first element of equitable estoppel. She did not show that Dr. Wright or St. Luke's made false representations or concealed material facts. Evans did not demonstrate that Dr. Wright and St. Luke's had actual knowledge of the injury she alleges they were trying to hide. She also did not show that Dr. Wright and St. Luke's should be charged with constructive knowledge of her injury. Notably, her argument that her damages became objectively ascertainable only when the X-rays showed an abnormally anteverted hip bone socket undermines her equitable estoppel argument that Dr. Wright and St. Luke's falsely represented or concealed her injury. Those two factual scenarios cannot simultaneously be true.

Because Evans has not satisfied the first element of equitable estoppel, we do not reach the remaining elements of her claim. Her equitable estoppel claim fails on its merits. In that vein, the district court's error in not addressing Evans's equitable estoppel argument was harmless.

**E.     Neither party is entitled to attorney fees.**

Both Dr. Wright and St. Luke's request attorney fees on appeal pursuant to Idaho Code section 12-121 and costs under Rules 40 and 41 of the Idaho Appellate Rules. St. Luke's argues that Evans's appeal is frivolous and without a basis in fact or law because it is merely an attempt

to find a more sympathetic trier of fact. Dr. Wright argues that Evans has done nothing more than request that this Court "reweigh the evidence or second guess the lower court." Evans did not request attorney fees on appeal.

"An award of attorney fees pursuant to Idaho Code section 12-121 is not a matter of right, 'but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation.'" *BrunoBuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 222, 457 P.3d 860, 874 (2020) (quoting *Hoover v. Hunter*, 150 Idaho 658, 664, 249 P.3d 851, 857 (2011)). "On the other hand, when a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation." *Id.* (citations omitted). In this case, Evans raised several legitimate legal arguments. We determined that the district court erred in ruling on some of the issues that Evans raised, even if the errors ultimately proved to be harmless. Accordingly, we decline to award attorney fees on appeal under Idaho Code section 12-121 to Dr. Wright or St. Luke's.

As the prevailing party on appeal, Dr. Wright and St. Luke's are entitled to costs pursuant to Idaho Appellate Rule 40(a).

## V.    CONCLUSION

We affirm the district court's order dismissing Evans's complaint. We decline to award attorney fees to either party on appeal. Dr. Wright and St. Luke's are granted their costs on appeal as the prevailing parties.

Chief Justice BEVAN and Justices MOELLER, ZAHN and FLEMING, J. *pro tem*, CONCUR.